<h1 style="text-align:center">EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP</h1>

RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
EARL S. WARD
ILANN M. MAAZEL
HAL R. LIEBERMAN
DANIEL J. KORNSTEIN
O. ANDREW F. WILSON
KATHERINE ROSENFELD
DEBRA L. GREENBERGER
ZOE SALZMAN
SAM SHAPIRO

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK 10020

TEL: (212) 763-5000
FAX: (212) 763-5001
www.ecbawm.com

DIANE L. HOUK

EMMA L. FREEMAN
DAVID BERMAN
HARVEY PRAGER
SCOUT KATOVICH
MARISSA BENAVIDES
NICK BOURLAND
ANDREW K. JONDAHL
ANANDA BURRA
MAX SELVER
VIVAKE PRASAD

October 26, 2020

**By ECF**

Hon. Steven M. Gold
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:  *Scott et al. v. Quay et al.,* 19-cv-01075-MKB-SMG

Dear Judge Gold:

    Together with the Benjamin N. Cardozo School of Law Civil Rights Clinic and Alexander A. Reinert, we represent the Plaintiffs in this putative class action. This action concerns Defendants' failures to provide safe and humane conditions to approximately 1,700 people confined in the Metropolitan Detention Center ("MDC") when its heating and electrical systems failed between January 27, 2019 and February 3, 2019 (the "Conditions Crisis"). We write in response to Defendants' letter and declaration (Hollingsworth Decl.) filed in support of Defendants' assertion of privilege with respect to certain portions of the BOP After-Action Report. *See* Dkt. 89.

    Plaintiffs maintain that Defendants are not entitled to withhold portions of the BOP After-Action Report on the basis of the so-called self-critical analysis privilege. As explained in Plaintiffs' September 15, 2020 submission to the court, *see* Dkt. 79 at 5-6, courts in the Second Circuit routinely reject the self-critical analysis privilege. *See e.g.*, *Hardy v. New York News, Inc.*, 114 F.R.D. 633, 640-41 (S.D.N.Y. 1987).

    But even if the Court were to accept the existence of the privilege, the BOP After-Action Report would not qualify. "The party asserting the privilege bears the burden of establishing it by a detailed and convincing showing of the harm to be anticipated from the disclosure." *MacNamara v. City of New York*, No. 04CIV.9612(KMK)(JCF), 2007 WL 755401, at *3 (S.D.N.Y. Mar. 14, 2007), *adhered to on reconsideration*, No. 04 CIV. 9216(RJS)(JCF), 2007 WL 3196295 (S.D.N.Y. Oct. 30, 2007) (internal quotation marks and citation omitted) (rejecting argument that self-critical

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
Page 2

analysis privilege applies to recommendations and opinions in NYPD after-action reports). Among other requirements, a party asserting this privilege must demonstrate that the information in question is the type that would, if discoverable, curtail the free flow of information. *E.B. v. New York City Bd. of Educ.*, 233 F.R.D. 289, 296 (E.D.N.Y. 2005). Defendants' submissions fail to make such a showing and their assertion of privilege should be rejected.

First, Mr. Hollingsworth's declaration is not sufficiently specific to support Defendants' claim of privilege. The declaration asserts that disclosing the unredacted BOP After-Action Report would chill the "free and candid flow of opinions" and lead after-action review teams to be "reserved in their criticism" of the Bureau of Prisons and "less likely to offer ideas and alternatives which could lead to improvement." Hollingsworth Decl. ¶¶ 4, 6. These statements fail to provide the requisite detailed showing of the anticipated harm, and are precisely the sort of broad-sweeping claims rejected by the court in *MacNamara*, which characterized the City of New York's contention that disclosing recommendations and opinions set forth in NYPD after-action reports "would chill the candor of NYPD members in describing mistakes . . . and suggesting areas of improvement, which in turn would undermine the NYPD's ability to effectively deliver police services" as a "conclusory assertion." 2007 WL 755401, at *4 & n.3 (noting that courts have repeatedly rejected "formulaic incantations of harm" in support of claims of privilege) (citation omitted); *see also E.B.*, 233 F.R.D. at 296-97 (rejecting application of privilege to corrective evaluations); *Wimer v. Sealand Serv., Inc.*, No. 96 CIV. 8730, 1997 WL 375661, at *2 (S.D.N.Y. July 3, 1997) (same as to corrective recommendations).

Second, production of the unredacted BOP After-Action Report will not result in the chilling effect asserted by Defendants because BOP employees are "public servants with an obligation to ensure that the [agency] serves the needs of the public as effectively as possible." *MacNamara*, 2007 WL 755401, at *4. In claiming that disclosing the After-Action Report in its entirety would lead review teams to reserve criticism of the BOP, Hollingsworth Decl. ¶¶ 4, 6, Defendants suggest that BOP employees would choose to prevent improvement of BOP operations rather than face the possibility that their report could be used to hold the BOP accountable for unlawful behavior.

Defendants' assertions that disclosure of the BOP After-Action Report would deter the BOP as an agency from investigating incidents in its facilities or from engaging in candid self-reflection are implausible. Hollingsworth Decl. ¶¶ 3, 4, 6.[1] Rather, the BOP "has a strong incentive to evaluate its tactics regularly and carefully because, as a government agency, it has an obligation to the public to ensure that its operations are effective." *MacNamara*, 2007 WL 755401, at *4. Courts in this Circuit routinely reject Defendants' position. *See E.B.*, 233 F.R.D. at 296 ("[T]his

---

[1] State and federal corrections after-action reports have been reported on or otherwise made available to the public at large repeatedly, and both state and federal corrections agencies continue to conduct these reviews. *See, e.g.*, Janosch Delcker, *Fatal Corrections*, Intercept (Dec. 17, 2016), https://theintercept.com/2016/12/17/inside-the-deadly-mississippi-riot-that-pushed-the-justice-department-to-rein-in-private-prisons/; Seth Freed Wessler, *Federal Officials Ignored Years of Internal Warnings About Deaths at Private Prisons*, Nation (June 15, 2016), https://www.thenation.com/article/archive/federal-officials-ignored-years-of-internal-warnings-about-deaths-at-private-prisons/; *After-Action Report – Willacy Co Correctional Facility TX, fBOP, 2015*, Prison Legal News (Dec. 29, 2016), https://www.prisonlegalnews.org/news/publications/after-action-report-willacy-co-correctional-facility-tx-fbop-2015/.

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
Page 3

Court questions whether a governmental agency would cease conducting [critical] reviews in the future to avoid their disclosure in litigation."); *Robinson v. United States*, 205 F.R.D. 104, 109-10 (W.D.N.Y. 2001) (finding it "implausible to believe that the Post Office would cease its practice of investigating accidents and writing up the results, in order to prevent future accidents, on the basis that such reports could be discoverable"); *Boyd v. City of New York*, No. 86 Civ. 4501, 1987 WL 6915, at *2 (S.D.N.Y. Feb. 11, 1987) (rejecting the "cynical view of municipal agencies" that if investigations are disclosed they will not be candid). "Frank and self-critical investigation is . . . more likely required by the pressure of public scrutiny than discouraged by it." *Boyd*, 1987 WL 6915, at *2.[2]

Finally, Defendants' contention in their September 15, 2020 submission to the court, *see* Dkt. 79 at 8, that redaction of the non-factual portions of the BOP After-Action Report outweighs Plaintiffs' need for the full BOP After-Action Report lacks merit. After-action reports chronicle and analyze the event in question and provide a cost and impact statement and recommendations based on "knowledge gained from the incident." Bureau of Prisons, 5500.14, *Program Statement* ¶ 604(g) (2012), https://www.bop.gov/policy/progstat/5500_014.pdf. Despite Defendants' claims to the contrary, these conclusions and recommendations are proportional to the needs of this action, at the heart of which is Defendants' failure to care for 1,700 people in their custody.

In sum, there is no basis for redacting the BOP After-Action Report, and Plaintiffs respectfully request that the Court order Defendants to produce the unredacted BOP After-Action Report.

Sincerely,

/s/
Scout Katovich
Katherine Rosenfeld
O. Andrew F. Wilson

---

[2] That BOP After-Action Reports are recommended for major incidents, such as the Conditions Crisis, but not mandated, does not change this analysis. Bureau of Prisons, 5500.14, *Program Statement* ¶ 2(g) (2012), https://www.bop.gov/policy/progstat/5500_014.pdf ("The expected results of this program are . . . [m]ajor incidents will be investigated by After-Action Review Teams, appointed by Regional Directors."); *see also* Hollingsworth Decl. ¶ 5. Courts in this Circuit have held that the privilege does not apply where the self-analysis would occur irrespective of its disclosure, such as where the party conducting the review has a compelling incentive or economic interest in doing so. *See E.B.*, 233 F.R.D. at 297 (rejecting privilege where agency had compelling interest in evaluating own performance); *In re Ashanti Goldfields Sec. Litig.*, 213 F.R.D. 102, 105 (E.D.N.Y. 2003) (finding privilege inapplicable where party had significant economic incentive in conducting self-evaluation); *Cruz v. Coach Stores, Inc.*, 196 F.R.D. 228, 232 (S.D.N.Y. 2000) (same). After-action reports generally contain a cost and impact statement that is considered an "integral part" of the review. Bureau of Prisons, *supra*, ¶ 604(h). Defendants' claim that the BOP has no economic interest in preparing after-action reports—especially a report regarding the Conditions Crisis, which could impose a significant amount of money in liability and required expensive emergency repairs—is unconvincing.