# CARDOZO LAW

BENJAMIN N. CARDOZO SCHOOL OF LAW • YESHIVA UNIVERSITY

## CIVIL RIGHTS CLINIC

**Betsy Ginsberg**
*Director*
*Clinical Professor of Law*

(646) 592-6495
Fax  (212) 790-0256
betsy.gingsberg@yu.edu

March 24, 2021

**BY ECF**
The Honorable Peggy Kuo
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   *Scott et al. v. Quay et al.*, 19-cv-01075 (ERK) (PK)
>        Joint Status Letter

Dear Judge Kuo:

Together with Emery Celli Brinckerhoff Abady Ward & Maazel LLP and Alexander A. Reinert, the Benjamin N. Cardozo School of Law Civil Rights Clinic represents Plaintiffs in this putative class action. This case concerns the week-long failure of heating and electrical systems that occurred at the Metropolitan Detention Center ("MDC") in Brooklyn, New York in January 2019, and the egregious conditions that followed, leaving approximately 1,600 people deprived of basic human necessities ("the Conditions Crisis").[1] The United States Attorney's Office for the Eastern District of New York represents all Defendants in this matter. This joint letter is respectfully submitted to provide a status update on the above-captioned case ahead of the scheduled March 29, 2021 status conference.

## Synopsis of the Case

This action is brought by six Plaintiffs (David Scott, Jeremy Cerda, Osman Ak, Gregory Hardy, Merudh Patel, and Larry Williams) on behalf of themselves and a putative class consisting of approximately 1,600 individuals who were incarcerated in the West Building at the MDC during the Conditions Crisis. Plaintiffs David Scott and Jeremy Cerda filed this putative class action on February 22, 2019 alleging violations of their constitutional rights under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), against former Warden Herman Quay. Dkt 1. On November 15, 2019, Plaintiffs amended the complaint, adding four additional named Plaintiffs (Ak, Hardy, Patel, and Williams), a class-wide claim for negligence under the Federal Tort Claims Act

---

[1] Defendants dispute Plaintiffs' characterization of the conditions at the MDC.

("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, against the United States of America, and Facilities Manager John Maffeo as a Defendant in the *Bivens* claim. Dkt. 29.

Defendants moved to dismiss the complaint on February 13, 2020 for failure to state a *Bivens* claim and for lack of subject matter jurisdiction over the FTCA claim. Dkt. 50, 65. Magistrate Judge Gold issued a Report and Recommendation ("R&R") on November 16, 2020, recommending that the motion to dismiss be denied as to Plaintiffs' FTCA claim and granted as to Plaintiffs' *Bivens* claims. Dkt. 95. Both parties filed objections to Judge Gold's R&R. Dkt. 99, 101. This case was reassigned to Judge Edward R. Korman on February 16, 2021, who adopted the R&R by Order dated March 22, 2021.

Plaintiffs filed this case as a class action pursuant to Fed. R. Civ. P 23(b)(3) and per the Court's February 11, 2021 Order, Plaintiffs served Defendants with their motion for class certification on February 17, 2021. Dkt. 118. Defendants are due to serve any opposition on or before April 30, 2021, and Plaintiffs are due to serve their reply, if any, on or before May 31, 2021. Dkt. 117.

Contemporaneously with this motion practice, pursuant to Magistrate Judge Gold's November 26, 2019 Order and prior to the decision on the Defendants' motion to dismiss, the parties have engaged in limited discovery. Dkt. 41. The parties have exchanged initial disclosures, interrogatories, and document requests under Fed. R. Civ. P. 33 and 34. Both parties responded with respective productions and objections to these requests but, prior to the motion to dismiss having been decided, agreed to move forward with preliminary discovery that will most immediately advance the case. Document requests included in Plaintiffs' initial requests but that were not part of the agreed-upon limited discovery that the parties engaged in will be revisited now that the motion to dismiss has been decided. The decision on the motion to dismiss now prompts the production of the unredacted after-action report produced by the BOP about the Conditions Crisis, which Magistrate Judge Gold ordered released, with certain redactions, to Plaintiffs "within one week of any Order denying, in whole or in part, Defendants' pending motion to dismiss." Memorandum & Order, Dkt. 94, at 5.

Defendants are currently producing biweekly batches of certain electronically stored information ("ESI") pursuant to an agreement the parties executed in May 2020, in accordance with the parameters established by Magistrate Judge Gold on May 26, 2020. Defendants are scheduled to complete this ESI discovery on April 22, 2021. Defendants have not yet provided Plaintiffs with a privilege log governing their ESI discovery but will do so after completion of their April 22, 2021 production. Plaintiffs anticipate scheduling depositions soon after the conclusion of Defendants' preliminary ESI production.

## Disputed Production of Electronic Communications

**Plaintiffs' Position**

Text Messages and Call Logs

Defendants are currently producing a set of ESI pursuant to a previously executed agreement between the parties from May 2020. This preliminary production is scheduled to conclude on April 22, 2021. By the terms of the agreement:

> ESI includes, but is not limited to, emails and attachments, voicemail, instant messaging and other electronic communications, word processing documents, text files, hard drives, spreadsheets, graphics, audio and video files, databases, calendars, telephone logs, transaction logs, Internet usage files, offline storage or information on removable media, and information contained on laptops, tablet computers, or other portable devices.

To date, Defendants have produced emails and attachments responsive to the search terms and date ranges specified in the agreement, but have neglected to produce text messages or call logs from the agreed-upon custodians. On March 15, 2021, Plaintiffs emailed Defendants asking when they should expect to receive text message and phone log discovery. Having received no response, Plaintiffs again asked Defendants about this discovery on March 16, 2021 and March 23, 2021. Defendants responded that ….

The language of the ESI agreement, specifically the phrase "instant messaging and other electronic communications" plainly includes text messages. Plaintiffs' discovery demands incorporate the definitions from Local Civil Rule 26.3(c)(1), in which the term "communication" means "the transmittal of information (in the form of facts, ideas, inquiries or otherwise)." Furthermore, neither the May 26, 2020 Order nor transcript suggest that ESI production should be limited to emails. In fact, Judge Gold referenced text messages in the March 9, 2020 conference, and as Defendants noted in response, neither former Warden Quay nor Facilities Manager Maffeo have personal cellular devices, meaning the litigation hold applies to emails and text messages related to the subject matter of the litigation sent and received on those phones. Tr. at 33-34. Dkt. 55.

Plaintiffs are also entitled to receive telephone logs, which are explicitly addressed in the ESI agreement.  Given the controlling and inclusive language in the agreement signed by both parties, Defendants are required to provide Plaintiffs with the call logs and text messages they have requested.

<u>Alias Emails</u>

For this initial ESI production, the parties negotiated a list of custodians that identified employees by name and title. A number of these custodians have both an individual BOP email account and an associated institutional alias (to give an invented example, "warden@"). Plaintiffs sought confirmation from Defendants that Defendants' ESI search ran the agreed-upon search terms on both individual and institutional email aliases for each custodian, but have not received it.  Defendants have represented that the search was of the named custodians' inboxes.

**Defendants' Position**

For the first time, after months of discussions concerning the initial ESI searches being conducted by the Federal Bureau of Prisons ("BOP") and after Defendants had completed five (of eight) rolling productions of the non-privileged responsive results, Plaintiffs raised questions about the extent of those searches. Defendants do not agree that (1) the ESI searches were required to include "alias" mailboxes or (2) the BOP was required to search phones during the initial ESI searches.

When the parties were unable to agree upon the parameters (custodians, date ranges, and search terms) for the initial ESI search to be conducted by the BOP, Judge Gold made a series of rulings during a conference on May 26, 2020. *See* Dkt. #71, #72. The list of custodians, which was derived from Plaintiffs' original proposed search parameters, did not include "alias" mailboxes or specify that they would be searched. At no time prior to last week did Plaintiffs inquire as to whether or not "alias" mailboxes were being searched in addition to the individuals' email accounts.

Further, there was no indication that the searches included or were required to include phones. From the outset, it was made clear that the BOP was searching the individual custodians' email accounts in accordance with the parameters established in Judge Gold's rulings. *See* Dkt. #73, #75-#78, 81; *see also* Dkt. #55 (Tr. of Mar. 9, 2020 Conf at 13:16-18 (reflecting the Court's understanding that Defendants were going to "pull and preserve" emails)). Due to the volume of the items located in the first searches (approximately 19,000), the BOP re-ran the searches twice – once to provide Plaintiffs with a breakdown of the number of hits per search term and then using modifications of the initial search terms. *See* Dkt. #81, 98 at 1; *see also* Dkt. #96. The revised search yielded 10,594 results after threading and deduplication. *See* Dkt. #98 at 2; *see also* Dkt. #102 at 2. Defendants made the first production of the email account search results (emails and attachments), on January 19, 2021.[2] Until last week, Plaintiffs had not mentioned phone searches to Defendants.

Defendants do not dispute that Plaintiff may be entitled to additional ESI discovery, and are not unwilling to discuss with Plaintiffs whether additional ESI discovery is warranted. However, as stated above, the parties have been engaging in limited discovery, and it is disingenuous to contend at this stage that Defendants have not fulfilled their discovery obligations. Defendants have been forthcoming with Plaintiffs about the searches being done by BOP, and the searches of the custodians' email accounts have consistently been referred to as the initial ESI searches. Plaintiffs' accusation that Defendants have failed to produce purportedly required classes of ESI – coming more than halfway through a voluminous ESI review and production and days before a long-scheduled status conference – is belied by the record.

Thank you for Your Honor's time and consideration of this submission.

---

[2] To date, Defendants have completed review of approximately 5,800 items with the next release scheduled to be made on March 26.

Respectfully submitted,


_____/s/_____
Betsy Ginsberg
CARDOZO CIVIL RIGHTS CLINIC
Clare Haugh, *Legal Intern*
Kira Brekke, *Legal Intern*

Scout Katovich
Katherine Rosenfeld
O. Andrew F. Wilson
EMERY     CELLI     BRINCKERHOFF
ABADY WARD & MAAZEL LLP

Alexander A. Reinert


cc:      All counsel of record (by ECF)