April 23, 2021

**BY ECF**
The Honorable Edward R. Korman
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Scott et al. v. Quay et al.*, 19-cv-01075 (ERK) (PK)

Dear Judge Korman:

      This joint letter is submitted in accordance with Your Honor's April 2, 2021 order for the parties to propose dates for the completion of discovery and advise the Court of disagreements between the parties as to the timing and scope of discovery.

### I.    *Proposed Dates for the Completion of Discovery*

      The parties have agreed on the following dates for the completion of discovery:

Document discovery (not including ESI) to be completed by June 30, 2021
Depositions to be completed by October 31, 2021
Affirmative expert reports due on November 30, 2021
Responsive expert reports due on January 31, 2022
Expert depositions to be completed by March 15, 2022

      However, the parties disagree as to the deadline for completing discovery of electronically stored information ("ESI") such as emails and text messages. Plaintiffs initially proposed June 30, 2021, the same date for completing all other document discovery. Defendants disagree and have indicated that they cannot represent that ESI discovery will be completed by that date.

### II.    *Preservation of Text Messages and Production of Other ESI*

      As discussed in the March 24, 2021 joint letter to Judge Kuo, Plaintiffs seek text messages from individual BOP employees in charge of the MDC during the Conditions Crisis and phone log discovery, which they believe is contemplated by the plain terms of the parties' ESI agreement. At the September 13, 2019 conference, Judge Gold and the Plaintiffs raised concerns about the litigation hold and preservation of ESI, and Defendants indicated they had emphasized and would reemphasize the importance of preserving ESI, both on Warden Quay's devices specifically and more broadly. Tr. at 14-15, 23-24, Dkt. 27. Judge Gold again referenced text messages in the March 9, 2020 conference and Defendants expressed that neither former Warden Quay nor Facilities Manager Maffeo have personal cellular devices and that a litigation hold was in place as to all their communications. Tr. at 33-34, Dkt. 55.

On April 14, 2021, Defendants informed Plaintiffs that, for ESI custodians' cell phones and other mobile devices, text messages sent and received on those devices are not "archived," which means that they are not automatically saved anywhere outside of the device (for example, on a server such as iCloud), so if the texts are deleted from the physical device, they cannot be retrieved. When the parties met and conferred on April 19, 2021, Defendants indicated that litigation holds are in place for Warden Quay and Facilities Manager Maffeo's devices and that text messages should have been maintained, but that if text messages were deleted off the device, they cannot be recovered. This means that only those texts which remain on the physical devices over two years after this case commenced can be searched. For landlines, there is no call log or other data available. Additionally, the BOP central office, which would perform the searches of these devices, requires the actual physical devices to conduct any searches. Defendants are still awaiting information from the BOP concerning the individuals' devices, what searches would entail, and how long they can be expected to take. Plaintiffs have requested that Defendants share the identities of those people who were issued litigation holds or preservation notices for their devices. Neither the location nor functionality of devices that are subject to litigation holds in this case is currently known to Plaintiffs.

In addition to responsive emails sent and received by ESI custodians' individual BOP email addresses, Plaintiffs also seek responsive emails sent and received by certain email addresses associated with specific MDC departments or offices (for example, "warden@" or "facilities@"), which are called "resource emailboxes." Defendants have informed Plaintiffs that, unlike ESI custodians' individual email addresses—which are maintained by the BOP—these resource emailboxes are maintained at the MDC and that someone at the individual facility will need to conduct the searches of the emailboxes that Plaintiffs have identified. These emails are also not stored on external servers or outside of the email account that sent them. Defendants have not provided any additional information to Plaintiffs about the retention schedule or the estimated time that these searches will take.

Plaintiffs respectfully request that this Court order Defendants to advise Plaintiffs as to (1) the location and functionality of all mobile devices subject to litigation holds, (2) the identities of those people who were issued litigation holds or preservation notices for their devices, (3) the estimated time required to conduct searches of said mobile devices, (4) the retention schedule for resource emailboxes, and (5) the estimated time required to search the resource emailboxes by May 7, 2021.

### III. *Specific Document Requests in Dispute*

The parties are engaging in an ongoing discussion regarding alleged deficiencies in each party's responses to the other's initial interrogatories and document requests. While the parties have agreed on how to proceed for the vast majority of document requests discussed, the parties are in dispute as to Plaintiffs' Document Requests No. 47, 48, and 49, which call for:

> <u>Request No. 47</u>: All Employee Performance Appraisals, performance evaluations, or performance reviews completed for Defendants Quay and Maffeo, and any documents related to those reviews.

<u>Request No. 48</u>: All personnel records for the following BOP employees, including attendance and payroll records for January 1, 2019 to March 1, 2019, records of any official investigations into the employee's conduct from January 1, 2009 to the present, and records of adverse or disciplinary actions from January 1, 2009 to the present: Herman Quay, John Maffeo, Milinda King, Eleazar Garcia, Caryn Flowers, Valery Logan, Paul Brady, John Sacco, Javier Diaz, Gerard Travers, and Mary Lou Comer.

<u>Request No. 49</u>: All documents concerning the transfer of Defendant Quay from MDC to the Federal Correctional Complex in Allenwood, Pennsylvania.

<u>Plaintiffs' Position</u>

Plaintiffs have claimed negligence by the United States in its maintenance and repair of the MDC, care for the people incarcerated there, and response to the Conditions Crisis. Employee performance appraisals, evaluations, and reviews for Warden Quay and Facilities Manager Maffeo would shed light on their professional performance and could provide support for Plaintiffs' negligence claim given Warden Quay and Facilities Manager Maffeo's involvement in facilities maintenance and repairs at the MDC, as well as Warden Quay's involvement in decisions about care, services, and information provided to people incarcerated at the MDC.

Personnel records and records of official investigations or adverse or disciplinary actions against any of the BOP employees listed in Request 48 are similarly relevant and important. The BOP employees listed in Request 48 were involved in facilities maintenance or repairs, medical care, and other care, services, or information provided to people incarcerated at the MDC during the Conditions Crisis. Information about their past performance deficiencies could provide support for Plaintiffs' negligence claim.

Finally, documents concerning Warden Quay's transfer from MDC are also clearly relevant to Plaintiffs' claims. Warden Quay was transferred from the MDC as of June 2019, shortly after the incident in question and before the Department of Justice's Office of the Inspector General published its report on the Conditions Crisis.[1] Given Plaintiffs' allegations of Warden Quay's knowledge of the MDC's longstanding infrastructure failures, failure to maintain basic living standards for people in his charge during the Conditions Crisis, and false and inaccurate statements about the Conditions Crisis, the BOP's rationale and characterization of Warden Quay's transfer would shed light on the perception of his conduct as the Warden of MDC, both generally and during the Conditions Crisis.

<u>Defendants' Position</u>

These vague and overly broad requests essentially seek all BOP records and very personal information for eleven employees, including the two individual Defendants as to whom the Court has dismissed the *Bivens* claims. Even if the protective order could address the Privacy Act concerns, the documents and the information sought are not relevant to the subject matter

---

[1] *See* Office of the Inspector Gen., *Review and Inspection of Metropolitan Detention Center Brooklyn Facilities Issues and Related Impacts on Inmates* (2019), https://oig.justice.gov/reports/2019/e1904.pdf.

3

involved in this action, and are disproportionate to the needs of the case. Plaintiffs' assertion that all of these records should be produced because they "could" support their negligence claims is misplaced. Plaintiffs have not demonstrated a need for these records. Further, Defendants also note that during the parties' meet and confer, Plaintiffs did not provide any justification for continuing to press for responses even though Defendants advised Plaintiffs in advance that they continue to object to these requests.

### IV.     *Designation of After-Action Report as Attorneys' Eyes Only/Confidential*

Plaintiffs challenge Defendants' designation of the After Action Report, which the parties discussed with the Court on April 2, 2021, as confidential and for attorneys' eyes only.[2] Plaintiffs provided Defendants with written notice of their objection as to the After Action Report's designation on April 6, 2021. The parties then met and conferred by phone and email. Defendants will apply to the Court for an order on this matter separately.

Plaintiffs' Position

The After Action Report should not be designated as confidential or for attorneys' eyes only. As an initial matter, it is a document of significant public concern and should be available for review by all putative class members, their families, community stakeholders, government officials, and other interested members of the public. There was and continues to be broad public interest in the Conditions Crisis, a week-long emergency at a large federal jail in the middle of New York City which received mass media coverage.[3]

Furthermore, the After Action Report does not reveal any information that would jeopardize the BOP's operations or the MDC's safety or security. While Defendants again cite Mr. Hollingsworth's declaration to support their position, as Plaintiffs noted in their October 26, 2020 letter to the Court regarding the After Action Report, Mr. Hollingsworth's assertions are precisely of the type rejected by courts in this Circuit. *See* Dkt. 92 at 2. Indeed, in ordering the AAR's production, Judge Gold noted:

---

[2] Under the terms of the parties' executed protective order, if a party contests another party's designation of materials as confidential and for attorneys' eyes only, the contesting party must begin the meet and confer process to attempt to resolve the dispute by notifying the producing party of its objection in writing, which Plaintiffs did on April 6, 2021. If the parties are unable to resolve the dispute within thirty days of receipt of the written notice of objection, the producing party has thirty days to apply to the Court pursuant to Fed. R. Civ. P. 26(c) to show good cause for an order specifically designating the disputed material as confidential and for attorneys' eyes only.

[3] *See, e.g.*, Annie Correal, *'Frantic' Inmates in Brooklyn Jail Complain of No Heat for Days in Deep Freeze*, N.Y. Times (Feb. 1, 2019), https://www.nytimes.com/2019/02/01/nyregion/mdc-brooklyn-jail-heat.html; Molly Crane-Newman et al., *Inmates in Brooklyn Federal Jail Go Without Heat, Hot Food: Accused NXIVM Cult Leader Among Them*, N.Y. Daily News (Feb. 1, 2019), https://www.nydailynews.com/new-york/brooklyn/ny-metro-mdc-prison-020119-story.html; Nick Pinto, *"'Vicious' and 'Brutal'" — Life Inside a Freezing Federal Prison with No Heat*, Intercept (Feb. 2, 2019), https://theintercept.com/2019/02/02/federal-prison-no-heat-new-york-nadler-mdc/; Steve Almasy et al., *Inmates Without Power at New York Federal Prison Shivering in Their Cells for Days*, CNN (Feb. 3, 2019), https://www.cnn.com/2019/02/02/us/new-york-federal-prison-no-heat/index.html; Kalhan Rosenblatt, *Lawyers Describe Inmate Conditions at Brooklyn Jail with Limited Heat, Power*, NBC News (Feb. 3, 2019), https://www.nbcnews.com/news/us-news/lawyers-describe-inmate-conditions-brooklyn-jail-limited-heat-power-n966381; Peter Wade, *Dismal Conditions Continue at Brooklyn's Metropolitan Detention Center, Which Is Still Without Heat*, Rolling Stone (Feb. 3, 2019), https://www.rollingstone.com/politics/politics-news/metropolitan-detention-center-heat-789346/.

> [I]t is far from clear that disclosure of the unredacted Report would inhibit the Bureau of Prisons from undertaking forthright reviews after institutional failures. The loss of electricity and heat at the MDC and the impact on detainees have already been the subject of substantial media and public attention. It strikes this Court that BOP, as a public agency, would prefer to be perceived as ready, willing, and able to take a hard, critical look at its own performance after an emergency like the one at issue in this lawsuit. This seems especially likely when the emergency conditions and their impact are already widely known.

November 16, 2020 Memorandum & Order at 3, Dkt. 94. As Judge Gold concluded, "defendants have failed to make a convincing showing that significant harm would result if the entire Report were disclosed." *Id.*[4]

Additionally, designating the After Action Report as confidential and for attorneys' eyes only will impede the open litigation of this case and public access to judicial documents. If the document remains sealed, all filings that cite or quote it in any detail will likewise require sealing, stifling the flow of open information about events which have captured large-scale public interest.

Finally, as to Plaintiffs' reference to the existing protective order, Plaintiffs had no way of meaningfully arguing that the After Action Report should not be designated for attorneys' eyes only before Defendants' April 5, 2021 production of the report; before then, large portions of the document had been completely redacted and it was impossible to judge whether and to what extent the document should be in the public record. After Plaintiffs were able to review the more fully unredacted version of the After Action Report, they have challenged its designation at the first available opportunity.

Defendants' Position

As set forth in the joint status letter to Judge Gold dated September 15, 2020 (Dkt. #79 at 5-8), in June 2020, Defendants produced the BOP After Action Report captioned "*Partial Electrical and Reported Heating Outage Civil Disturbance*" for the MDC ("After Action Report") to Plaintiffs' counsel. In addition to designating the After Action Report as "Confidential – Subject to Protective Order Attorneys' Eyes Only," Defendants redacted some portions of the report based on the self-critical analysis privilege. *See* Dkt. #79 at 7-8; *see also* Dkt. #89 (submitting unredacted report for *in camera* review) and #89-1 (Declaration of Richard Hollingsworth ("Hollingsworth Decl.")). In Memorandum & Order dated November 16, 2020 (Dkt. #94), Judge Gold concluded that the privilege did not apply to some redactions, upheld the assertion of the privilege as to the entire section entitled "Recommendations," and ordered Defendants to produce a copy of the After Action Report with only the "Recommendations" section redacted to Plaintiffs within one week of any Order denying, in whole or in part, Defendants' pending motion to dismiss. On April 5, 2021, Defendants provided a copy of the

---

[4] Plaintiffs dispute Defendants' characterization of Judge Gold's order as upholding the asserted self-critical analysis privilege as to the "Recommendations" section of the After Action Report. Judge Gold upheld the redaction of the "Recommendations" section "assuming such a privilege is even available as a matter of law." Dkt. 94 at 4.

After Action Report with only the "Recommendations" section redacted to Plaintiffs' counsel. The report was marked "Confidential – Attorney's Eyes Only."

The After Action Report should continue to be marked "Confidential" and "Attorneys' Eyes Only" and should not become a part of the public record. It is a highly sensitive document that was generated by the agency with an expectation that it would remain confidential, and its release for public consumption would cause harm to the BOP's operations. As Correctional Services Administrator Hollingsworth attested in his declaration, After Action Reports are used by the BOP to investigate and analyze significant incidents at institutions in order to identify areas of concern, assess vulnerabilities, and optimize agency performance. Dkt. #89-1 ¶ 3. Review teams provide candid and unvarnished impressions, perceptions and recommendations in these reports with the understanding that the content of the report is confidential, that the report will remain confidential, and that it is not for public consumption. *Id.* The non-factual portions of the reports comprising the review teams' assessment, recommendations and conclusions are particularly sensitive. *Id.* These concerns about these critical study reports continue to exist, notwithstanding Judge Gold's determination that Plaintiffs were entitled to view the redacted portions under the terms of the protective order (Dkt. #62).

When they challenged Defendants' assertion of the self-critical analysis, Plaintiffs argued that "[p]roducing an unredacted version of the report would not curtail any flow of information, particularly where, as here, there is a robust protective order in place." Dkt. #79 at 6. Plaintiffs now seek to abrogate that protection despite having maintained that the existence of the protective order was a compelling reason why the unredacted After Action Report should be produced in discovery. However, the BOP's interests and concerns about having the report become part of the public record, as set forth in Defendants' prior submissions the Hollingsworth Declaration, remain unchanged. The After Action Report is properly designated as "Confidential" and "Attorneys' Eyes Only" under the terms of the protective order.

***

The Court's attention to these matters is appreciated.

Sincerely,

| | |
|---|---|
| Scout Katovich | Sean P. Greene-Delgado |
| Katherine Rosenfeld | Kathleen Mahoney |
| O. Andrew F. Wilson | Shana C. Priore |
| Sonya Levitova, *Legal Fellow* | Paulina A. Stamatelos |
| Emery Celli Brinckerhoff Abady Ward & Maazel LLP | *United States Attorney's Office* |

Betsy Ginsberg
Kira Brekke, *Legal Intern*
Clare Haugh, *Legal Intern*
*Civil Rights Clinic, Benjamin N. Cardozo School of Law*

Alexander A. Reinert

cc: All Counsel of Record (via ECF)