UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DAVID SCOTT, et al.,

       Plaintiffs,

   v.

FORMER WARDEN HERMAN QUAY, et al.,

       Defendants.

No. 19 Civ. 1075

(Korman, J.)
(Kuo, M.J.)


# MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CERTIFICATION OF CLASSES AND APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
600 Fifth Avenue, 10th Floor
New York, NY 10020
(212) 763-5000

CARDOZO CIVIL RIGHTS CLINIC
Benjamin N. Cardozo School of Law
55 Fifth Avenue, 11th Floor
New York, NY 10003
(212) 790-0871

ALEXANDER A. REINERT, ESQ.
55 Fifth Avenue, Room 1005
New York, NY 10003
(646) 592-6543

<strong><u>TABLE OF CONTENTS</u></strong>

<strong><u>PAGE NO.</u></strong>

TABLE OF AUTHORITIES ....................................................................................................iii-vii

PRELIMINARY STATEMENT ....................................................................................................1

STATEMENT OF FACTS ..............................................................................................................2

    I.       THE CONDITIONS CRISIS ..........................................................................2

    II.      PROCEDURAL HISTORY .............................................................................4

    III.    CLASS-WIDE ALLEGATIONS AND RELIEF SOUGHT ............................4

    IV.    PROPOSED CLASS REPRESENTATIVES ...................................................5

          A.     David Scott.............................................................................................5

          B.     Jeremy Cerda ........................................................................................5

          C.     Osman Ak .............................................................................................6

          D.     Merudh Patel ........................................................................................6

          E.     Gregory Hardy ......................................................................................7

          F.     Larry Williams .....................................................................................8

    V.      PROPOSED CLASSES FOR CERTIFICATION ...................................................8

ARGUMENT .................................................................................................................................10

    I.       THE PROPOSED CLASSES SATISFY THE REQUIREMENTS OF RULE 23(a) .................................................................................................................10

          A.     Numerosity – Rule 23(a)(1) .................................................................11

          B.     Commonality – Rule 23(a)(2) ..............................................................11

          C.     Typicality – Rule 23(a)(3) ...................................................................14

          D.     Adequacy of Representation – Rule 23(a)(4) ............................................15

    II.      THE PROPOSED CLASSES ARE ASCERTAINABLE ....................................17

    III.    THE PROPOSED CLASSES SATISFY RULE 23(b)(3) ....................................18

          A.     Common Questions of Law and Fact Predominate ...................................19

i

B.     A Class Action Is Superior to Other Methods of Adjudication ................21

CONCLUSION ....................................................................................................................25

# TABLE OF AUTHORITIES

**PAGE NO.**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..................................................................... 19, 21, 22

*American Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974)................................................................................. 9

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000)..................................................................... 15

*Belfiore v. Procter & Gamble Co.*,
    311 F.R.D. 29 (E.D.N.Y. 2015)............................................................. 17

*Betances v. Fischer*,
    304 F.R.D. 416 (S.D.N.Y. 2015) ........................................................... 20

*Bivens v. Six Unknown Named Agents*,
    403 U.S. 388 (1971)...................................................................... *passim*

*Brecher v. Republic of Argentina*,
    806 F.3d 22 (2d Cir. 2015)..................................................................... 17

*Brown v. Kelly*,
    244 F.R.D. 222 (S.D.N.Y. 2007) ........................................................... 16

*Brown v. Kelly*,
    609 F.3d 467 (2d Cir. 2010)................................................................... 21

*Butler v. Suffolk Cty.*,
    289 F.R.D. 80 (E.D.N.Y. 2013) ...................................................... *passim*

*California Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
    137 S. Ct. 2042 (2017)............................................................................. 9

*Charron v. Pinnacle Grp. N.Y. LLC*,
    269 F.R.D. 221 (S.D.N.Y. 2010) ........................................................... 17

*Coco v. Incorporated Village of Belle Terre*,
    233 F.R.D. 109 (E.D.N.Y. 2005) ........................................................... 22

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)..................................................................... 11

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007)............................................................... 19, 21

*Cortigiano v. Oceanview Manor Home For Adults*,
227 F.R.D. 194 (E.D.N.Y. 2005) ................................................................. 18

*Cutler v. Perales*,
128 F.R.D. 39 (S.D.N.Y. 1989) .................................................................. 14

*D'Alauro v. GC Servs. Ltd. P'ship*,
168 F.R.D. 451 (E.D.N.Y. 1996) ............................................................... 22

*Dunn v. City of Chicago*,
1 F.R.D. 367 (N. D. Ill. 2003) ................................................................... 19

*Ebin v. Kangadis Food Inc.*,
297 F.R.D. 561 (S.D.N.Y. 2014) ............................................................... 17

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011) ................................................................................. 20

*Hamilton v. Vannoy*,
No. 17 Civ. 00194 (M.D. La.) ................................................................... 16

*Hill v. City of New York*,
No. 13 Civ. 6147, 2019 WL 1900503 (E.D.N.Y. Apr. 29, 2019) ................... 22

*Hilton v. Wright*,
235 F.R.D. 40 (N.D.N.Y. 2006) ................................................................. 17

*Hoeffner v. D'Amato,*
No. 09 Civ 3160, 2019 WL 1428367 (E.D.N.Y. Mar. 29, 2019) ................... 14

*Holland v. Florida*,
560 U.S. 631(2010) ................................................................................. 10

*Howard v. Hendrix*,
No. 15 Civ. 04549 (E.D.N.Y.) ................................................................... 16

*In re Ashanti Goldfields Sec. Litig.*,
No. 00 Civ. 0717, 2004 WL 626810 (E.D.N.Y. Mar. 30, 2004) ................... 21

*In re Nassau Cty. Strip Search Cases*,
461 F.3d 219 (2d Cir. 2006) ............................................................... 13, 22

*In re Nassau Cty. Strip Search Cases*,
No. 99 Civ. 2844, 2008 WL 850268 (E.D.N.Y. Mar. 27, 2008) ................... 24

*In re Visa Check/Master Money Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001) ............................................................... 19, 24

*Ingles v. City of New York,*
　　No. 01 Civ. 8279, 2003 WL 402565 (S.D.N.Y. Feb. 20, 2003) ................................. 12, 16

*J.G. by Mrs. G. v. Bd. of Educ. of Rochester City Sch. Dist.,*
　　830 F.2d 444 (2d Cir. 1987).................................................................................. 12

*Johnson v. Nextel Commc'ns Inc.,*
　　780 F.3d 128 (2d Cir. 2015)................................................................................. 11

*Jones v. Goord,*
　　190 F.R.D. 103 (S.D.N.Y. 1999) ......................................................................... 14

*Langley v. Coughlin,*
　　715 F. Supp. 522 (S.D.N.Y. 1989).................................................................. *passim*

*Lewis v. Alert Ambulette Serv. Corp.,*
　　No. 11 Civ. 442, 2012 WL 170049 (E.D.N.Y. Jan. 19, 2012)......................... 15

*Marisol A. v. Guiliani,*
　　126 F.3d 372 (2d Cir. 1997)................................................................... 10, 11, 14

*McBean v. City of New York,*
　　260 F.R.D. 120 (S.D.N.Y. 2009) ......................................................................... 16

*McCarron v. United States,*
　　No. 18 Civ. 1903 (E.D.N.Y.) ............................................................................... 16

*Moore v. PaineWebber, Inc.,*
　　306 F.3d 1247 (2d Cir. 2002)................................................................................ 19

*Myers v. Hertz Corp,*
　　624 F.3d 537 (2d Cir. 2010)................................................................................. 23

*Newkirk v. Pierre,*
　　No. 19 Civ. 4283, 2020 WL 5035930 (E.D.N.Y. Aug. 26, 2020) ................... 12

*Nunez v. City of New York,*
　　No. 11 Civ. 5845, 2015 WL 10015955 (S.D.N.Y. July 10, 2015) ................... 15

*Pace v. DiGuglielmo,*
　　544 U.S. 408 (2005)............................................................................................... 10

*Pagan v. Abbott Laboratories, Inc.,*
　　287 F.R.D. 139 (E.D.N.Y. 2012) ......................................................................... 23

*Parker v. City of New York,*
　　No. 15 Civ. 6733, 2017 WL 6375736 (E.D.N.Y. Dec. 11, 2017) ................... 18

*Parker v. City of New York*,
No. 15 Civ. 6733, 2018 WL 6338775 (E.D.N.Y. Dec. 4, 2018) .............................. 17, 20

*Peoples v. Annucci*,
180 F. Supp. 3d 294 (S.D.N.Y. 2016) .............................................................. 17

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) ........................................................................ 11, 14

*Robinson v. Metro-North Commuter R.R.*,
267 F.3d 147 (2d Cir. 2001) ........................................................................ 14

*Rosario v. Goord*,
No. 03 Civ. 0859 (S.D.N.Y.) ....................................................................... 16

*Rossini v. Ogilvy & Mather, Inc.*,
798 F.2d 590 (2d Cir. 1986) ........................................................................ 19

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) .................................................................................. 10

*Sharif v. N.Y. State Educ. Dep't*,
127 F.R.D. 84 (S.D.N.Y. 1989) .................................................................... 10

*Steinberg v. Nationwide Mut. Ins. Co.*,
224 F.R.D. 67 (E.D.N.Y. 2004) ................................................................... 23

*Stinson v. City of New York*,
282 F.R.D. 360 (S.D.N.Y. 2012) .................................................................. 20

*Tyler v. Suffolk Cty.*,
253 F.R.D. 8 (D. Mass. 2008) ...................................................................... 12

*United States v. Kwai Fun Wong*,
575 U.S. 402 (2015) .................................................................................... 9

*Ventura v. N.Y.C. Health & Hosp. Corp.*,
125 F.R.D. 595 (S.D.N.Y. 1989) .................................................................. 14

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .................................................................................. 11, 14

**Statutes**

28 U.S.C. § 2401 ................................................................................................ 9

28 U.S.C. § 2675 ............................................................................................ 4, 8

Fed. R. Civ. P. 23 ..................................................................................... *passim*

# PRELIMINARY STATEMENT

The Metropolitan Detention Center ("MDC") lost power on January 27, 2019, as the "Polar Vortex" brought icy temperatures and winds to New York, which were felt acutely at the MDC, a federal prison which sits at the water's edge in Brooklyn. An electrical fire had caused the jail's West Building to lose power, leaving 1,600 incarcerated people to weather the severe cold in their dark, freezing cells ("the Conditions Crisis"). For the next seven days, people held at the MDC waited in the bitter cold for the power to return, while temperatures outside dropped to two degrees Fahrenheit and winds gusted at twenty-five miles per hour. They suffered freezing temperatures and darkness, without adequate clothing or blankets. They lacked necessary medication, medical care, hot water, and functional plumbing. They spent the week eating cold food and unable to communicate with family or legal counsel.

Plaintiffs David Scott, Jeremy Cerda, Osman Ak, Merudh Patel, Gregory Hardy, and Larry Williams brought this action because the Conditions Crisis was caused by Defendants' longstanding neglect of the MDC's infrastructure, and, once the Crisis was underway, Defendants were negligent and deliberately indifferent to the health and safety of everyone held in the MDC. Plaintiffs submit this memorandum of law in support of their motion to certify this case as a class action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of themselves and all others confined in the MDC West Building during this crisis, seeking redress for the inhumane conditions they endured.

Courts routinely grant class certification in cases such as this. Defendants treated the proposed classes in uniform ways and subjected them to uniform conditions. Because the inhumane treatment was the result of Defendants' facility-wide practices and policies, and the proposed classes of incarcerated people seek damages for injuries suffered from a single cause or set of causes, a Rule 23(b)(3) class action is the standard mechanism for adjudication.

The alternative to class certification—permitting the independent litigation of each individual's claims in hundreds of largely *pro se* complaints—would tax the resources of this Court. Additionally, given the financial and practical barriers to class members' abilities to bring individual suits, it is likely that many class members would never have an opportunity to present their claims. Thus, the only reasonable means by which to proceed is on a class basis.

## STATEMENT OF FACTS

### I.    THE CONDITIONS CRISIS

At 12:55 p.m. on January 27, 2019, a fire broke out in the control room of the MDC's West Building, where approximately 1,600 people were housed.[1] The fire critically damaged an electrical panel and caused a partial power failure that deprived the MDC's entire West Building of power and electricity for a week and forced the people housed there into the brutality of darkness and freezing cold, as temperatures in New York City fell as low as two degrees Fahrenheit. *OIG Report* at i, 10; Patton Testimony at 2. As a result of the fire, the West Building lost electricity in a range of systems, including overhead lighting and electrical outlets in staff offices and common areas, the facility's computer systems, and the facility's phones. *OIG Report* at 1.

The blackout was entirely foreseeable and preventable. According to the U.S. Department of Justice's Office of the Inspector General, at least five years before the blackout, the Bureau of Prisons ("BOP") "itself identified" that it needed to update the MDC HVAC electrical system and install a Building Management System ("BMS") to effectively regulate temperatures at the MDC. *Id*. at 20. In early January 2019, foreshadowing the impending crisis by only weeks, the facility

---

[1] *October 17, 2019 Oversight Hearing on "The Federal Bureau of Prisons and Implementation of the First Step Act" Before the Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. On the Judiciary*, 116th Cong. 2 (statement of David E. Patton, Executive Director, Federal Defenders of New York) [hereinafter Patton Testimony]; Office of the Inspector Gen., *Review and Inspection of Metropolitan Detention Center Brooklyn Facilities Issues and Related Impacts on Inmates*, at i, 5 (2019) [hereinafter *OIG Report*], https://oig.justice.gov/reports/2019/e1904.pdf.

experienced multiple hours-long blackouts and heating issues. *See id.* at 8. Defendants' neglect and indifference to these problems caused the electrical fire, and its consequences were catastrophic. Over the week-long course of the Conditions Crisis, 1,600 people faced unconstitutional and inhumane conditions that threatened and affected their mental and physical wellbeing. Patton Testimony at 2; *see* Exs. A-E (Declarations of David Scott ("Scott Decl."), Osman Ak ("Ak Decl."), Merudh Patel ("Patel Decl."), Gregory Hardy ("Hardy Decl."), and Larry Williams ("Williams Decl.")).

During the Conditions Crisis, people in the West Building were confined in their cells in near pitch-black darkness, shivering in their beds with minimal or no heat for up to twenty-four hours per day. Scott Decl. ¶¶ 7, 14-15; Ak Decl. ¶¶ 9-11, 16; Patel Decl. ¶¶ 6, 11-12; Hardy Decl. ¶¶ 7, 13; Williams Decl. ¶ 8-9; Am. Compl. ¶¶ 104-05, 114, 123; *see also OIG Report* at ii, 12. Defendants ignored requests for medical attention, psychiatric care, medication, warm clothing, food, water, and other basic help. Scott Decl. ¶¶ 31-32; Hardy Decl. ¶¶ 31-37; Williams Decl. ¶¶ 20-25. Defendants strictly limited or denied access to hot water and hot showers, and many cell toilets were broken and filled with decaying feces. Am. Compl. ¶¶ 119, 126; Hardy Decl. ¶ 20. Defendants also failed to provide access to clean water even though the plumbing was impacted. When the sinks were functioning, brown water came out of the faucets. Am. Compl. ¶ 118.

Defendants provided meals on at best inconsistent and at worst nonexistent schedules, leaving people without regular access to water and hot food—and because the Commissary was closed, people could not purchase additional food or clean clothing. Ak Decl. ¶ 18; Patel Decl. ¶¶ 13-14; Williams Decl. ¶¶ 13-15. There was no access to laundry and people were forced to live in soiled clothing and sleep in dirty bedding. Scott Decl. ¶ 20. Throughout the Crisis, because Defendants suspended all visitation and there was inadequate access to email or phone

communications, 1,600 people had no way to communicate with counsel or their families. *OIG Report* at 30; Scott Decl. ¶¶ 25-27; Ak Decl. ¶¶ 24-25; Hardy Decl. ¶¶ 25-27. Heat, electricity, and regular operations were eventually restored at the MDC on February 3, 2019, seven days after the Conditions Crisis began.

## II.     PROCEDURAL HISTORY

Plaintiffs filed their Complaint on February 22, 2019 and their Amended Complaint on November 15, 2019. After Defendants moved to dismiss, Dkt. 65, 66, this Court referred their motion to Magistrate Judge Gold, who issued his Report and Recommendation ("R&R") on November 16, 2020. Dkt. 95. Judge Gold recommended that Plaintiffs' Federal Tort Claims Act ("FTCA") claims proceed and that Plaintiffs' *Bivens* claims be dismissed. Both parties have filed objections to Judge Gold's R&R. Dkt. 99, 101. Meanwhile, the parties have engaged in discovery related to Plaintiffs' FTCA claims and Defendants are beginning to produce responsive electronically stored information. Dkt. 115.

## III.    CLASS-WIDE ALLEGATIONS AND RELIEF SOUGHT

Plaintiffs and putative class members are all individuals who were confined in the MDC West Building during the Conditions Crisis. Plaintiffs bring claims on behalf of themselves and the Plaintiff class, challenging Defendants' violations of (1) their statutory rights pursuant to the FTCA for a claim of negligence; and (2) their constitutional rights under the Fifth and Eighth Amendments of the U.S. Constitution pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). In the first class, Mr. Scott and Mr. Cerda seek to represent all persons incarcerated in the MDC's West Building during the Conditions Crisis who have or will in the future have satisfied the exhaustion requirement imposed by 28 U.S.C. § 2675 ("the FTCA Class") and are asserting a claim of negligence pursuant to the FTCA. All the named Plaintiffs seek to assert *Bivens* claims on behalf of the second class, the more than 1,600 people who were confined in the MDC's West

Building during the Conditions Crisis. Plaintiffs seek damages on behalf of themselves and the proposed classes for the conditions they all endured during the Crisis.

## IV.     PROPOSED CLASS REPRESENTATIVES

### A.     David Scott

At the time of the Conditions Crisis, David Scott was 60 years old and confined at the MDC while awaiting trial. Like the other people incarcerated in the West Building, Mr. Scott endured the Polar Vortex in lockdown and without: light in his cell, Scott Decl. ¶¶ 7, 8; heat or adequate clothing, *id.* ¶¶ 9-15; hot water for bathing, *id.* ¶ 20; clean water to drink or sufficient or warm food to eat, *id.* ¶¶ 17-18; clean laundry, *id.* ¶ 21; any way to buy warmer clothing or additional food from the Commissary, *id.* ¶ 18; and access to counsel or a way to communicate with his family, *id.* ¶¶ 25-27. As a result of the inhumane living conditions Mr. Scott felt exceedingly isolated, alone, and afraid. *Id.* ¶¶ 29-30. On April 30, 2019, Mr. Scott sent a Standard Form-95 ("SF-95") to the BOP seeking administrative relief for his experience during the Conditions Crisis. *Id.* ¶ 38. The BOP denied his request on October 31, 2019. *Id.*

### B.     Jeremy Cerda

At the time of the Conditions Crisis, Jeremy Cerda was a 25-year-old pre-trial detainee confined at the MDC for violating a condition of his bond. He suffered from diagnosed major depression and anxiety. Am. Compl. ¶ 100. Like the other people incarcerated in the West Building, Mr. Cerda endured the Polar Vortex in lockdown, *id.* ¶ 114, and without: light in his cell, *id.* ¶ 104; heat or adequate clothing, *id.* ¶¶ 105, 107-08, 123; hot water for bathing, *id.* ¶ 126; clean water to drink or sufficient or warm food to eat, *id.* ¶¶ 117-18; clean laundry, *id.* ¶ 111; any way to buy warmer clothing or additional food from the Commissary, *id.* ¶ 109; and access to counsel or a way to communicate with his family, *id.* ¶¶ 124-25.

Mr. Cerda had no access to medical care or mental health treatment during the Conditions Crisis, despite suffering from diagnosed major depression and anxiety. *Id.* ¶¶ 100, 129, 131. During the Conditions Crisis, he could not tolerate being locked in his cell for twenty-four hours a day, felt scared and alone, and considered hurting himself. *Id.* ¶ 128. On April 30, 2019, Mr. Cerda sent an SF-95 form to the BOP seeking administrative relief for his experiences during the Conditions Crisis. *Id.* ¶ 133. The BOP denied his request on October 31, 2019. *Id.*

**C.    Osman Ak**

At the time of the Conditions Crisis, Osman Ak was 47 years old and imprisoned at the MDC pursuant to the terms of his criminal sentence. Like the other people incarcerated in the West Building, Mr. Ak endured the Polar Vortex in lockdown, Ak Decl. ¶ 10, and without: light in his cell, *id.* ¶ 9; heat or adequate clothing, *id.* ¶¶ 11-14, 16; hot water for bathing, *id.* ¶ 17; clean water to drink or sufficient or warm food to eat, *id.* ¶ 18; clean laundry, *id.* ¶¶ 13-15; any way to buy warmer clothing or additional food from the Commissary, *id.* ¶ 19; and access to counsel or a way to communicate with his family, *id.* ¶¶ 24-26. Because Mr. Ak was living in complete darkness, he feared for his safety, thinking anyone could be attacked at any given moment. *Id.* ¶¶ 26-27. His living environment was loud and chaotic, and he received no information about when power would be restored. *Id.* ¶ 21. On September 5, 2019, Mr. Ak sent an SF-95 form to the BOP seeking administrative relief for his experiences during the Conditions Crisis. The BOP denied his request on March 9, 2020.

**D.    Merudh Patel**

At the time of the Conditions Crisis, Merudh Patel was 31 years old and imprisoned at the MDC pursuant to the terms of his criminal sentence. Like the other people incarcerated in the West Building, Mr. Patel endured the Polar Vortex in lockdown, Patel Decl. ¶ 12, and without: light in his cell, *id.* ¶ 6; heat or adequate clothing, *id.* ¶¶ 7-11; hot water for bathing, *id.* ¶ 16; clean water

to drink or sufficient or warm food to eat, *id.* ¶ 13; clean laundry, *id.* ¶ 9; any way to buy warmer clothing or additional food from the Commissary, *id.* ¶ 14; and access to counsel or a way to communicate with his family, *id.* ¶¶ 20-22. Due to the isolation of his living conditions, Mr. Patel felt worried and neglected, which was worsened by the yelling and banging from those around him trying to get an MDC officer's attention. *Id.* ¶¶ 18-19. He did not receive any information about when power would be restored. *Id.* On August 20, 2019, Mr. Patel sent an SF-95 form to the BOP seeking administrative relief for his experiences during the Conditions Crisis. The BOP denied his request on February 21, 2020.

### E. Gregory Hardy

At the time of the Conditions Crisis, Gregory Hardy was 45 years old and imprisoned at the MDC pursuant to the terms of his criminal sentence. Like the other people incarcerated in the West Building, Mr. Hardy endured the Polar Vortex in lockdown, Hardy Decl. ¶¶ 6, 13, and without: light in his cell, *id.* ¶ 7; heat or adequate clothing, *id.* ¶¶ 8-12; hot water for bathing, *id.* ¶¶ 18-19; clean water to drink or sufficient or warm food to eat, *id.* ¶¶ 14-15, 17; clean laundry, *id.* ¶¶ 11, 21; any way to buy warmer clothing or additional food from the Commissary, *id.* ¶ 16; and access to counsel or a way to communicate with his family, *id.* ¶¶ 25-27. Mr. Hardy had a kidney condition and had trouble breathing during the Crisis. Like others, his requests for medical care went ignored. *Id.* ¶¶ 32-36. Mr. Hardy was stressed, claustrophobic, scared, and had trouble sleeping. *Id.* ¶¶ 28-30. The panic button in his cell did not work and the living environment on his unit was loud and hostile. *Id.* ¶¶ 22, 36. People were banging on their cells in frustration that MDC staff had locked the unit into their cells and that no information was being provided. *Id.* ¶ 22. For an additional two weeks after power was restored, Mr. Hardy was denied his essential medication despite his repeated requests. *Id.* ¶¶ 35, 37. On November 4, 2019, Mr. Hardy sent an SF-95 form

to the BOP seeking administrative relief for his experiences during the Conditions Crisis. The BOP denied his request on September 17, 2020.

### F.    Larry Williams

At the time of the Conditions Crisis, Larry Williams was 45 years old and imprisoned at the MDC pursuant to the terms of his criminal sentence. He suffered from hypothyroidism. Williams Decl. ¶ 20. Like the other people incarcerated in the West Building, Mr. Williams endured the Polar Vortex in lockdown, *Id.* ¶ 9, and without: light in his cell, *id.* ¶ 5; heat or adequate clothing, *id.* ¶¶ 8, 10; hot water for bathing, *id.* ¶ 15; clean water to drink or sufficient or warm food to eat, *id.* ¶¶ 13-14; clean laundry, *id.* ¶¶ 11, 16; any way to buy warmer clothing or additional food from the Commissary, *id.* ¶ 12; and access to counsel or a way to communicate with his family, *id.* ¶¶ 17-19. Like others, Mr. Williams requested medical care for symptoms of hypothyroidism but was ignored. *Id.* ¶¶ 24-25. When Mr. Williams requested medical attention, MDC officers told him "no one's there." *Id.* ¶ 24. His repeated requests for mental health treatment went ignored by MDC officers. *Id.* ¶ 25. On December 3, 2019, Mr. Williams sent an SF-95 form to the BOP seeking administrative relief for his experiences during the Conditions Crisis. The BOP denied his request on November 10, 2020.

## V.    PROPOSED CLASSES FOR CERTIFICATION

Petitioners move to certify two classes under Rule 23(b)(3) for the more than 1,600 people that were confined in the MDC's West Building during the Conditions Crisis: one pursuant to the Federal Tort Claims Act (the "FTCA Class") and a second for *Bivens* claims (the "*Bivens* Class").

The FTCA Class Representatives are Mr. Scott and Mr. Cerda. The FTCA Class consists of all persons incarcerated at the MDC's West Building during the Conditions Crisis who have or will in the future have satisfied the exhaustion requirement imposed by 28 U.S.C. § 2675. Mr. Scott and Mr. Cerda had exhausted the necessary administrative remedies at the time Plaintiffs

filed their FTCA claims. Both had their SF-95 claims denied two weeks before the filing of the Amended Complaint, satisfying the six-month requirement of 28 U.S.C. § 2401(b). As of this filing, Plaintiffs' counsel is aware of at least 997 class members who have individually filed administrative claims with the BOP regarding the Conditions Crisis. Plaintiffs' counsel also filed an "omnibus" administrative claim on behalf of 573 putative class members with the BOP on January 26, 2021. Ex. F (Declaration of Katherine Rosenfeld ("Rosenfeld Decl.")) ¶ 10.

Both of the FTCA's time limits provided in 28 U.S.C. § 2401(b)—the two-year time limit to file an administrative claim and the six-month time limit to file a lawsuit after the denial of a claim—are subject to *American Pipe* tolling in this instance. Plaintiffs' filing of their FTCA claims on November 15, 2019 therefore tolled class members' two-year time limit to file an administrative claim with the BOP and their six-month time limit to file suit after the BOP denied their administrative claims.[2] *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) ("[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."); *United States v. Kwai Fun Wong*, 575 U.S. 402, 412 (2015) ("The time limits in the FTCA are just time limits . . . a court can toll them on equitable grounds."); *California Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2052 (2017) (holding that *American Pipe* tolling is an "equitable power[]" of courts). Additionally, claims of the FTCA Class members who faced COVID-19 pandemic barriers to submitting their administrative claims to the BOP by January 27, 2021 are also entitled to equitable tolling.[3]

---

[2] This latter issue is not ripe for adjudication because the parties are operating under an agreement whereby the BOP is not currently issuing denials of class members' requests for reconsideration and therefore tolling class members' six-month deadline to file suit.

[3] The COVID-19 pandemic has dramatically impacted putative class members' ability to timely file their SF-95 forms despite diligent attempts to do so, an extraordinary circumstance that merits equitable tolling of the two-year deadline

The *Bivens* Class Representatives are Mr. Scott, Mr. Cerda, Mr. Ak, Mr. Patel, Mr. Hardy, and Mr. Williams. The *Bivens* Class consists of all individuals who were confined in the MDC's West Building during the Conditions Crisis.

## ARGUMENT

Plaintiffs are entitled to litigate their case as a class action because the proposed classes readily satisfy the requirements of Rule 23(a), are ascertainable, and meet the requirements of Rule 23(b)(3). *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Rule 23 is construed liberally. *See Marisol A. v. Guiliani*, 126 F.3d 372, 377 (2d Cir. 1997). Courts must err "in favor and not against the maintenance of a class action." *Sharif v. N.Y. State Educ. Dep't*, 127 F.R.D. 84, 87 (S.D.N.Y. 1989) (quotation marks and citations omitted).

## I.  THE PROPOSED CLASSES SATISFY THE REQUIREMENTS OF RULE 23(a)

As required by Rule 23(a), both the FTCA and *Bivens* classes ("the Classes") (a) are so numerous that joinder is impracticable, (b) raise important questions of law and fact that are common to all class members, (c) allege claims of the Class Representatives that are typical of the experiences of all class members housed in the West Building of the MDC during the Conditions Crisis, and (d) lack conflicts of interest between the Class Representatives and the putative class members. Additionally, the proposed classes are easily ascertainable.

---

to submit an administrative claim. *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (a petitioner establishes equitable tolling "if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."). Many putative class members are incarcerated at BOP facilities that have been subject to pandemic-related lockdowns, causing delays in receiving and sending legal mail, as putative class members have communicated to counsel. Rosenfeld Decl. ¶ 7. Given the pandemic's ongoing and emergent nature, some putative class members, especially those who are incarcerated, have been unable to timely file their SF-95 claims, and equitable tolling is appropriate. *See id.* ¶¶ 8-9.

### A.    Numerosity – Rule 23(a)(1)

The Classes are "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). The proposed classes plainly satisfy this requirement with approximately 1,600 respective members. Attempting to join the claims of the individual class members in this action would be impracticable. *See, e.g.*, *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).

### B.    Commonality – Rule 23(a)(2)

This case raises common issues because Plaintiffs challenge treatment and practices to which all class members were subjected during the Conditions Crisis. Multiple factual and legal questions are common to all class members. Rule 23(a)(2) requires only that a "single common question" unite the proposed class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal quotation marks and alterations omitted); *see also Marisol A.*, 126 F.3d at 377. Plaintiffs must establish that their claims depend on just one "common contention" which must be "capable of classwide resolution" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. What matters is the class action's "capacity . . . to generate common answers apt to drive the resolution of the litigation." *Id.* (internal quotation marks, citations, and emphasis omitted). Common issues arise where the defendant's conduct "gives rise to the same kind of claims from all class members." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (internal quotation marks and citation omitted).

In the prison and jail context, courts in this circuit have repeatedly held that the nature of conditions in a single prison is a common question of fact subject to class-wide resolution. *Butler v. Suffolk Cty.*, 289 F.R.D. 80, 98 (E.D.N.Y. 2013) (finding commonality requirement met where

incarcerated individuals alleged they were subjected to unconstitutional conditions such as freezing temperatures, leaking water, and inadequate ventilation); *Ingles v. City of New York*, No. 01 Civ. 8279, 2003 WL 402565, at *1 (S.D.N.Y. Feb. 20, 2003) (finding commonality met where plaintiffs in New York City Department of Correction facilities alleged a "pattern and practice of excessive force . . . ."); *Langley v. Coughlin*, 715 F. Supp. 522, 555 (S.D.N.Y. 1989) (finding that common issues included whether prison conditions including noise, smell, lack of hygiene, smoke and fire violated the constitution).

Courts have also held that defendants' knowledge and deliberately indifference to a jail's condition is a "common question subject to class-wide resolution." *Butler*, 289 F.R.D. at 98; *see Tyler v. Suffolk Cty.*, 253 F.R.D. 8, 10 (D. Mass. 2008) (finding commonality where the conditions of confinement presented a common question of fact and law). Here, there are similarly common questions regarding the conditions of the MDC during the Conditions Crisis and the negligence and deliberate indifference of BOP officials, including former Warden Herman Quay and Facilities Manager John Maffeo.

Plaintiffs allege systemic claims of negligence and deliberate indifference which injured the more than 1,600 class members. Such claims "lend themselves well to class action treatment." *J.G. by Mrs. G. v. Bd. of Educ. of Rochester City Sch. Dist.*, 830 F.2d 444, 447 (2d Cir. 1987). The common factual and legal questions at issue in this case are "capable of classwide resolution . . . because plaintiffs' assertions as to defendant's acts, omissions, and failures are not specific to any particular plaintiff." *Newkirk v. Pierre*, No. 19 Civ. 4283, 2020 WL 5035930, at *9 (E.D.N.Y. Aug. 26, 2020) (internal quotation marks and citations omitted). The Rule 23(a)(2) commonality requirement is therefore satisfied.

On its face, the Complaint raises questions of fact common to all Plaintiffs and proposed class members, *see* Am. Compl. ¶¶ 331, 343, including but not limited to: (1) whether incarcerated people were detained in freezing temperatures without adequate clothing or blankets; (2) whether Defendants were aware of the need to properly maintain the infrastructure of the MDC but failed to do so for years in advance of the Conditions Crisis; (3) what measures Defendants took in response to the Conditions Crisis; (4) whether Defendants implemented an adequate emergency plan during the Conditions Crisis; (5) whether Defendants' practices during the Conditions Crisis exposed people at the MDC to a substantial risk of serious harm; and (6) whether the Defendants knew of and disregarded a substantial risk of serious harm to the safety and health of the Classes. Whether these common facts permit Plaintiffs to state a tort claim for negligence under the FTCA or a constitutional claim are legal questions which can also be resolved with common proof. *See, e.g.*, *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006) ("[A]n issue is common to the class when it is susceptible to generalized, class-wide proof.") (citation omitted).

The common questions of law include but are not limited to: (1) whether the policies, practices, acts, and omissions of the Defendants exhibit deliberate indifference in violation of the Fifth and Eighth Amendments; (2) whether Defendants' conduct posed an unreasonable risk of harm to the *Bivens* Class members' health, safety, and welfare, in violation of the Fifth and Eighth Amendments (a mixed question of law and fact); (3) whether Defendants' failure to exercise proper oversight of the MDC's facilities amounts to negligence; and (4) whether Defendants' intentional and malicious misconduct warrants punitive damages. *See* Am. Compl. ¶¶ 331, 343.

These common questions of law and fact are the core of each class member's claims. Because determining the "truth or falsity" of these questions would allow for resolution of such

issues for the entire class and drive this litigation's resolution, commonality is easily established. *See Wal-Mart Stores*, 564 U.S. at 350.

### C. Typicality – Rule 23(a)(3)

The claims of the class representatives here are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The proposed class representatives' claims are typical because they arise out of the same general "course of events" and rely on "similar legal arguments to prove the defendant[s'] liability." *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001) (quoting *Marisol A.*, 126 F.3d at 376); *see Robidoux*, 987 F.2d at 936-37 (typicality usually satisfied "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented"). To determine whether the typicality requirement is met, courts analyze the essential nature of the class representatives' claims and not the specific facts from which they arose. *See Jones v. Goord*, 190 F.R.D. 103, 112 (S.D.N.Y. 1999) (holding that the possibility that proposed class representatives suffered different injuries is immaterial to their ability to satisfy the typicality requirement in the prison context).

The Class Representatives' claims arise out of the same Conditions Crisis at the MDC. Each member's injuries resulted from "a unitary course of conduct by a single system," sufficient to satisfy Rule 23(a)(3). *Marisol A.*, 126 F.3d at 377. The Class Representatives experienced the same Conditions Crisis as all putative class members and must prove the same elements of negligence and deliberate indifference. Thus, "by advancing their own interests, [the named] plaintiffs will advance the interests of the class." *Ventura v. N.Y.C. Health & Hosp. Corp.*, 125 F.R.D. 595, 600 (S.D.N.Y. 1989) (citations omitted); *Cutler v. Perales*, 128 F.R.D. 39, 45 (S.D.N.Y. 1989) (typicality satisfied where "all members of the putative class would benefit by the success of the named plaintiff[s]"); *see also Hoeffner v. D'Amato*, No. 09 Civ. 3160, 2019 WL 1428367, at *7 (E.D.N.Y. Mar. 29, 2019).

Here, because all class members' claims arise out of the MDC's Conditions Crisis and all class members rely on the same legal argument and seek damages for their harms, all putative class members will benefit from the proposed class representatives' success. The Classes satisfy the typicality requirement of Fed. R. Civ. P. 23(a)(3).

### D.    Adequacy of Representation – Rule 23(a)(4)

Plaintiffs satisfy Rule 23(a)(4)'s requirement that class representatives and their counsel "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A]dequacy of representation entails inquiry as to whether: 1) plaintiff[s'] interests are antagonistic to the interest[s] of other members of the class and 2) plaintiff[s'] attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). "Only a fundamental conflict will defeat the adequacy of representation requirement," and in this case there is no conflict of interest at all between class members and the Class Representatives. *Lewis v. Alert Ambulette Serv. Corp.*, No. 11 Civ. 442, 2012 WL 170049, at *11 (E.D.N.Y. Jan. 19, 2012). All class members have an interest in receiving damages as redress for the physical and mental injuries experienced during the Conditions Crisis.

The Classes are represented by Emery Celli Brinckerhoff Abady Ward & Maazel LLP ("ECBAWM"), the Benjamin N. Cardozo Civil Rights Clinic ("The Civil Rights Clinic"), and Alexander A. Reinert, all of whom have significant experience litigating constitutional claims, class action lawsuits, and prisoners' rights cases. *See* Exs. F-H (Rosenfeld Decl., Declaration of Betsy Ginsberg ("Ginsberg Decl."), and Declaration of Alexander A. Reinert ("Reinert Decl.")).

ECBAWM and its partners Katherine Rosenfeld and O. Andrew F. Wilson have extensive experience handling class actions and complex litigation in federal courts. *See, e.g.*, *Nunez v. City of New York*, No. 11 Civ. 5845, 2015 WL 10015955 (S.D.N.Y. July 10, 2015) (approving consent settlement in class action against New York City Department of Corrections for excessive force);

*Brown v. Kelly*, 244 F.R.D. 222, 233 (S.D.N.Y. 2007), *aff'd in part, vacated in part on other grounds*, 609 F.3d 467 (2d Cir. 2010) (referring to ECBAWM as "a preeminent civil rights firm"); *McBean v. City of New York*, 260 F.R.D. 120, 132 n.17 (S.D.N.Y. 2009) (finding that "the services . . . provided by [ECBAWM] in this matter amply demonstrate counsel's ability and determination to represent the class effectively"). ECBAWM attorneys have represented thousands of persons incarcerated in city, state, and federal prisons regarding claims of unconstitutional prison conditions. The firm is well-equipped to represent the class here.

Betsy Ginsberg is the Director of the Civil Rights Clinic and Director of Clinical Legal Education at the Benjamin N. Cardozo School of Law, where she serves as a Clinical Professor of Law. Among the cases litigated by the clinic are *McCarron v. United States*, No. 18 Civ. 1903 (E.D.N.Y.) (*Bivens* and FTCA action seeking damages and injunctive relief for individual denied medical care at MDC) and *Howard v. Hendrix*, No. 15 Civ. 04549 (E.D.N.Y.) (RFRA and *Bivens* case involving MDC's failure to make religious accommodations), *Hamilton v. Vannoy*, No. 17 Civ. 00194 (M.D. La.) (class action challenging long-term solitary confinement policies on death row at Louisiana State Penitentiary). Professor Ginsberg also litigated class action prison cases at the Prisoners' Rights Project of Legal Aid Society and the Prison Law Office in California. Among the class actions in which Ms. Ginsberg was lead or co-counsel are *Ingles v. City of New York*, No. 01 Civ. 8279 (S.D.N.Y.) (class action on behalf of New York City pre-trial detainees concerning a pattern and practice of excessive force) and *Rosario v. Goord*, No. 03 Civ. 0859 (S.D.N.Y.) (class action on behalf of incarcerated people challenging disability-based discrimination). *See* Ginsberg Decl.

Alexander Reinert is a law professor at the Benjamin N. Cardozo School of Law where he teaches, among other classes, Civil Procedure, Constitutional Law, Federal Courts, and a course

on the rights of incarcerated people. Mr. Reinert has been litigating civil rights cases involving the rights of incarcerated people for almost 20 years, first as an associate at Koob & Magoolaghan and then as co-counsel with law firms and non-governmental organizations. *See Parker v. City of New York*, No. 15 Civ. 6733, 2018 WL 6338775 (E.D.N.Y. Dec. 4, 2018) (class action relating to the use of solitary confinement in New York City jails); *Peoples v. Annucci*, 180 F. Supp. 3d 294 (S.D.N.Y. 2016) (class action relating to use of solitary confinement in New York State prisons) *Hilton v. Wright*, 235 F.R.D. 40, 52 (N.D.N.Y. 2006) (class action relating to the treatment of incarcerated people with Hepatitis C in New York State prisons). *See* Reinert Decl.

Accordingly, both elements of Rule 23(a)(4) are satisfied. This Court should appoint ECBAWM, the Civil Rights Clinic, and Mr. Reinert as joint class counsel.

## II. THE PROPOSED CLASSES ARE ASCERTAINABLE

The Second Circuit has recognized an additional implied requirement under Rule 23, ascertainability, which is satisfied where the proposed classes are "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (citations omitted). "For a class to be ascertainable, the class definition must, first, be based on 'objective criteria' and, second, it must be 'administratively feasible' to identify class members without conducting a 'mini-hearing on the merits of each case.'" *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 65 (E.D.N.Y. 2015) (quoting *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010)). This additional requirement exists "only to prevent the certification of a class whose membership is truly indeterminable." *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014) (internal quotation marks and citation omitted).

The Classes in this action are unambiguously ascertainable. Class membership for the Classes is governed by objective criteria, proof of which is within Defendants' possession and will

be apparent at the time of judgment: for the FTCA Class, incarceration by the BOP in the MDC West Building from January 27, 2019 to February 3, 2019 and submission of an administrative claim to the BOP, and for the *Bivens* class, incarceration by the BOP in the MDC West Building during the relevant time period. *See Cortigiano v. Oceanview Manor Home For Adults*, 227 F.R.D. 194, 207 (E.D.N.Y. 2005) (ascertainability satisfied where class membership could be determined with documents in defendants' "custody and control").

It has already proven administratively feasible to identify class members, as the Defendants have already identified and disclosed to Plaintiffs' Counsel class members' names and contact information, and the BOP is easily able to ascertain whether a class member has filed an administrative claim. Dkt. 83. Plaintiffs thus satisfy the ascertainability requirement.

## III.    THE PROPOSED CLASSES SATISFY RULE 23(B)(3)

Both Classes satisfy the requirements of Rule 23(b)(3), which ask the court to find that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Within the context of conditions of confinement claims, courts have certified class actions under Rule 23(b)(3) where the policy or practice at issue injured prisoners and pre-trial detainees. *See Butler*, 289 F.R.D. at 103 (certifying class of prisoners and pre-trial detainees under Rule 23(b)(3) arising out of conditions of confinement at New York county correctional facility).

Similarly, courts have certified class actions under Rule 23(b)(3) where the policy or practice at issue injured incarcerated class members in potentially individualized ways. *Parker v. City of New York*, No. 15 Civ. 6733, 2017 WL 6375736, at *11 (E.D.N.Y. Dec. 11, 2017) (certifying a class under Rule 23(b)(3) of pretrial detainees held in solitary confinement or punitive segregation for no legitimate purpose and without due process regardless of any "factual or legal

variations" among class members); *Langley*, 715 F. Supp. at 561 (certifying class under Rule 23(b)(3) of incarcerated people who experienced myriad hazardous conditions including noise, filth, and odor); *see also Dunn v. City of Chicago*, 231 F.R.D. 367, 377 (N. D. Ill. 2003) (certifying class of detainees under Rule 23(b)(3) and noting that "[c]ourts routinely address conditions of confinement claims in class actions").

### A.     Common Questions of Law and Fact Predominate

The predominance requirement serves the purpose of determining whether the parties are "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Satisfying Rule 23(a)(3)'s typicality requirement is a strong indicator of predominance. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

When assessing this requirement, the court looks to whether there are common questions of law and fact as they relate to each class member. *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 106 (2d Cir. 2007). "A plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks and citations omitted). Class-wide issues predominate where "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

Here, as in *Butler*, the conditions of confinement claims are asserted on behalf of all class members, regardless of whether they were pre-trial or post-conviction at the time of the blackout. Like the classes certified by the *Butler* and *Langley* courts, class members in the instant case allege

violations of their rights based on multiple, concurrent conditions of confinement that "may have a more acute effect . . . than would any one in isolation." *Langley*, 715 F. Supp. at 543; *Butler*, 289 F.R.D. 80. And as in *Parker*, the "central issue of the constitutionality" and tortious nature of Defendants' actions predominates. 2017 WL 6375736, at *11.

Whether Plaintiffs have met this burden requires the Court to examine the elements of the underlying cause of action. *Stinson v. City of New York*, 282 F.R.D. 360, 382 (S.D.N.Y. 2012); *see Erica P. John Fund, Inc. v. Halliburton Co*., 563 U.S. 804, 808-15 (2011). The question at the core of each class member's cause of action is whether the Defendants' actions before and during the Conditions Crisis amounted to a violation of the Constitution and/or negligence. These questions of law are the same for each of the people housed in the MDC's West Building. These determinations of negligence and unconstitutionality predominate over any factual variations among class members, including the question of individualized damages. *See Betances v. Fischer*, 304 F.R.D. 416, 429 (S.D.N.Y. 2015) (finding that questions of the defendant correction officers' liability predominated over the individualized circumstances of class members where common proof could be used to assess the plaintiff's claim of a constitutional violation); *Butler*, 289 F.R.D. at 102 (finding that questions of unconstitutionality of conditions of confinement and defendants' deliberate indifference predominated over "the extent of each class members' [sic] damages").

The predominance standard is met here because the overarching common question is whether Defendants' conduct, policies, and practices in creating and responding to the dangerous and inhumane conditions in the MDC during the Conditions Crisis violated Defendants' legal obligations to the classes. This fundamental question does not vary among class members, and every prospective class member would be forced to litigate this issue in the absence of class certification. Rule 23(b)(3) certification is thus well suited for this case because all Plaintiffs

challenge the uniform practices of Defendants at the MDC, creating a "strong commonality of the violation and the harm." *Brown v. Kelly*, 609 F.3d 467, 468 (2d Cir. 2010) (quoting *In re Visa Check*, 280 F.3d at 136). Determining whether the Defendants violated the Constitution and/or acted negligently will rely on generalized class-wide proof of the conditions at MDC during the Conditions Crisis and the systematic causes thereof. *See Cordes & Co. Fin. Servs.*, 502 F.3d at 107-08. Class certification would allow these questions of law and fact to be resolved at once.

### B. A Class Action Is Superior to Other Methods of Adjudication

Compared to the alternatives, a class action is the superior method of resolution for the instant case. Fed. R. Civ. P. 23(b)(3). Predominance and superiority are intertwined: the predominance of common facts rather than significant individual issues is an important indicator of superiority. However, several non-exhaustive factors inform the superiority analysis, including (1) class members' interests in individually controlling their own litigation; (2) the extent and nature of any already-pending litigation concerning the controversy; (3) the desirability of concentrating claims in a particular judicial forum; and (4) potential problems that could arise in managing the case as a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D); *see In re Ashanti Goldfields Sec. Litig.*, No. 00 Civ. 0717, 2004 WL 626810 (E.D.N.Y. Mar. 30, 2004). In the present case, every factor weighs in favor of class certification.

First, class members have minimal interest in controlling the prosecution of separate actions. Bringing individual suits would involve substantial costs and would be impracticable. *See In re Ashanti Goldfields*, 2004 WL 626810, at *17 (finding class members' interest in individually controlling prosecution of separate actions "minimal" where costs and expenses of bringing individual suits would "far exceed any individual recoveries"). While the damages suffered by all class members are substantial, the damages of each individual claim are small in relation to the burden and expense of individual litigation. As a result, it poses a challenge for each class member

to attempt to obtain individual redress and have their fair day in court. *See Amchem Prods., Inc.*, 521 U.S. at 617. Indeed, in outlining the factors of Rule 23(b), "the Advisory Committee . . . had dominantly in mind [the] vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Hill v. City of New York*, No. 13 Civ. 6147, 2019 WL 1900503, at *10 (E.D.N.Y. Apr. 29, 2019) (citing *Amchem Prods., Inc.*, 521 U.S. at 617) (internal quotation marks omitted). Because these barriers prevent class members from obtaining effective relief, there is little interest in individual class members controlling their individual claims. These obstacles to individuals bringing separate suits are particularly onerous when a putative class is composed entirely of incarcerated or recently incarcerated people. Absent class certification, it is likely that the rights of many individual class members would go unvindicated. *See, e.g.*, *D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996) (in considering Rule 23(b)(3) superiority, it is appropriate for the court to consider the "improbability that large numbers of class members would possess the initiative to litigate individually" (internal quotation marks and citation omitted)).

Second, this lawsuit has sufficiently progressed to caution against denying certification. *See In re Nassau Cty. Strip Search Cases*, 461 F.3d at 230 (finding the extent of litigation factor persuasive where the case had "progressed substantially"). The parties have been engaged in discovery since December 2019 and have exchanged hundreds of documents. *See* Dkt. 41. Further, the parties have briefed the Defendants' motion to dismiss and filed objections to the Magistrate Judge's R&R. Dkt. 113, 114.

Third, it is desirable to concentrate this litigation as a class action in this forum. A class action is the most efficient method of adjudication for a lawsuit with a large number of plaintiffs. *See Coco v. Incorporated Village of Belle Terre*, 233 F.R.D. 109, 116 (E.D.N.Y. 2005) (finding

that class certification was a more effective method of adjudication than individual litigation where the class consisted of 800 plaintiffs). Here, the Classes include more than 1,600 class members, which makes adjudication absent class certification impracticable. For the FTCA class, almost 1,000 class members have *already* submitted their administrative claims to the BOP. Class certification is desirable to prevent 1,600 potential individual lawsuits that would flood the judicial system rather than serving the economies of time, effort, and expense. *See Myers v. Hertz Corp*, 624 F.3d 537, 547 (2d Cir. 2010). Additionally, class adjudication "will avoid duplicative lawsuits with potentially inconsistent results." *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 80 (E.D.N.Y. 2004). The filing of this putative class action has already stemmed the tide of extraneous lawsuits concerning the Conditions Crisis as many of the plaintiffs who filed related lawsuits have voluntarily dismissed those cases to join this action as putative class members. Concentrating the litigation as a class action in this form is particularly desirable because "the interests of justice will be well served." *Id.* (internal quotation marks and citation omitted).

Fourth and finally, there will be no extraordinary difficulty in the management of this case as a class action. The predominance of common issues of fact and law over individual issues is proof that the action is manageable. *See Pagan v. Abbott Laboratories, Inc.*, 287 F.R.D. 139, 151 (E.D.N.Y. 2012). The core issue in this case—whether the conditions in the MDC were caused by Defendants' failures and resulted in inhumane and illegal conditions of confinement—may be addressed through common evidence as to, *inter alia*, the physical conditions inside the facilities and the Defendants' policies and practices affecting their maintenance.

Over the past year and half, Plaintiffs' Counsel have assisted almost 1,000 of the 1,600 class members successfully to file administrative claim forms with the BOP. Pursuant to the Court's Orders, Dkt. 80, 107, Defendants have provided address information for class members

both in and out of Bureau custody—all of which is indicative of the relative ease with which any judgment for Plaintiffs could be disbursed. The Court also has a number of devices available to manage the damages claims in this class action, including employing representative sampling techniques or appointing a special master to assess damages, if that should be necessary. *See In re Nassau Cty. Strip Search Cases*, No. 99 Civ. 2844, 2008 WL 850268, at *6 (E.D.N.Y. Mar. 27, 2008) (identifying devices available for determining damages on a class-wide basis); *Langley*, 715 F. Supp. at 558 (discussing potential management devices and noting that "it bears emphasis that courts have been perfectly willing, based simply on proof of objective conditions in a prison, to award *per diem* damages to an inmate unconstitutionally confined"). Importantly, the Second Circuit has held that "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule." *In re Visa Check*, 280 F.3d at 141 (internal quotation marks and citations omitted). The Classes are manageable, and the certification of this action will allow the case to continue to proceed in the efficient, organized manner it has to date. As all four factors weigh in favor of proceeding as a class action, and a class action would serve the economies of time, effort, and expense, a class action is thus the superior method of adjudication.

# CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the classes as set forth above, pursuant to Rule 23(b)(3).

Dated: New York, New York
       February 17, 2021

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP

By: _____/s_____

        Katherine Rosenfeld
        O. Andrew F. Wilson
        Scout Katovich
        Sonya Levitova, *Fellow*
        600 Fifth Avenue, 10th Floor
        New York, NY 10020
        (212) 763-5000

CARDOZO CIVIL RIGHTS CLINIC

        Betsy Ginsberg
        Kira Brekke, *Legal Intern*
        Clare Haugh, *Legal Intern*
        Benjamin N. Cardozo School of Law
        55 Fifth Avenue, 11th Floor
        New York, NY 10003
        (212) 790-0871

ALEXANDER A. REINERT, ESQ.

        Alexander A. Reinert
        55 Fifth Avenue, Room 1005
        New York, NY 10003
        (212) 790-0403

        *Attorneys for Plaintiffs and the Putative Class*