# EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP

RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
EARL S. WARD
ILANN M. MAAZEL
HAL R. LIEBERMAN
DANIEL J. KORNSTEIN
O. ANDREW F. WILSON
KATHERINE ROSENFELD
DEBRA L. GREENBERGER
ZOE SALZMAN
SAM SHAPIRO

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK 10020

TEL: (212) 763-5000
FAX: (212) 763-5001
www.ecbawm.com

DIANE L. HOUK

EMMA L. FREEMAN
DAVID BERMAN
HARVEY PRAGER
SCOUT KATOVICH
MARISSA BENAVIDES
NICK BOURLAND
ANDREW K. JONDAHL
ANANDA BURRA
MAX SELVER
VIVAKE PRASAD
NOEL R. LEÓN

June 10, 2021

**By ECF**

Hon. Peggy Kuo
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re:  *Scott et al. v. Quay et al.,* 19-cv-01075 (ERK) (PK)

Dear Magistrate Judge Kuo:

  Together with the Benjamin N. Cardozo School of Law Civil Rights Clinic and Alexander A. Reinert, we represent the Plaintiffs in this certified class action arising out of the power loss and resulting horrific conditions experienced by more than 1600 people held in the Metropolitan Detention Center during the winter of 2019. We write in opposition to Defendant's request for an Order designating the Bureau of Prison's After-Action Report ("AAR") as "Confidential – Attorneys' Eyes Only." Defendant's request should be rejected for multiple reasons.[1]

  As an initial matter, Defendant misses the mark when it suggests that Plaintiffs must show that there is a litigation need to lift the confidentiality designation from the AAR. The opposite is true – it is Defendant who must overcome a significant burden to maintain the confidentiality designation in this case. *See* Stipulation and Order for the Protection of Materials and Information, Docket No. 62-1, at ¶¶ 4-5 (requiring that party seeking to maintain confidentiality designation apply to the Court and meet Rule 26(c)'s requirements); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004) ("[I]f good cause is not shown, the discovery materials in question should not receive judicial protection . . .") (internal quotation marks omitted). Good cause requires a

---

[1] Defendant initially produced the AAR to Plaintiffs with substantial redactions. After Plaintiffs objected, Defendant raised the same objections it raises here. *See* ECF No. 89. On November 16, 2020, Magistrate Judge Steven M. Gold rejected Defendant's arguments and ordered that Defendant produce a copy of the AAR in mostly unredacted form to Plaintiffs' counsel within one week of any order denying, in whole or in part, Defendant's motion to dismiss. *See* ECF No. 94.

"particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Salter v. I.C. Sys., Inc.*, No. 04 Civ. 1566, 2005 WL 3941662, at *1 (D. Conn. May 3, 2005) (internal quotation marks omitted). Defendant must provide facts and evidence to show both that good cause exists and that a protective order is "necessary to protect" Defendant from harm. *McDonnell v. First Unum Life Ins. Co.*, No. 10 Civ. 8140, 2012 WL 13933, at *1 (S.D.N.Y. Jan. 4, 2012). Defendant may not rely on a "naked conclusory statement" of injury to support its confidentiality claim. *See Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982); *see also Havens v. Metro. Life Ins. Co.*, No. 94 Civ. 1402, 1995 WL 234710, at *11 (S.D.N.Y. April 20, 1995) ("[D]efendant fails to specify the nature or extent of injury [that] it contemplates release of the sealed documents would bring about, and accordingly fails to establish good cause.").

Defendant has not met its burden for at least two reasons. First, its asserted basis for confidentiality, the self-critical analysis privilege, is of dubious validity and has not been recognized by most courts in this Circuit. And second, even if the Court deems cognizable the self-critical analysis privilege, Defendant has not carried the heavy weight of showing it applies here.

Defendant fails to discuss *any* law in its submission, but it bears noting that neither the Second Circuit nor the Supreme Court has ever recognized the self-critical analysis privilege. *Johannes v. Lasley*, No. 17 Civ. 3899, 2019 WL 1958310, at *3 (E.D.N.Y. May 2, 2019); *Zikianda v. Cty. of Albany*, No. 12 Civ. 1194, 2013 WL 936446, at *3 (N.D.N.Y. Mar. 8, 2013). To the contrary, many courts in the Second Circuit have acknowledged that recognizing the privilege would be inconsistent with the Supreme Court's decision in *University of Pennsylvania. v. E.E.O.C.,* 493 U.S. 182, 189 (1990), which refused to recognize a medical peer-review privilege under federal law. *See, e.g., Zikianda*, 2013 WL 936446, at *3 ("[O]ne wonders if such a self-critical analysis privilege would be viable in light of *University of Pennsylvania v. E.E.O.C.*"); *see also Mitchell v. Fishbein*, 227 F.R.D. 239, 251–53 (S.D.N.Y. 2005) (collecting cases); *Roberts v. Hunt*, 187 F.R.D. 71, 75 (W.D.N.Y. 1999) ("Further, the court does not agree that a so-called self-evaluative privilege, as asserted by Defendants, is available under federal law."). And the Second Circuit rejected a claimed "self-evaluative" privilege in *Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 134 (2d Cir. 1996), where the defendant provided "no authority for the existence of such a privilege."[2] This court should follow the "the majority of the cases within this Circuit" and hold that the self-critical analysis does not apply as a matter of federal common law. *Zikianda*, 2013 WL 936446, at *3; *see also Alaska Elec. Pension Fund v. Pharmacia Corp.*, 554 F.3d 342, 351 n.12 (3d Cir. 2009) (noting that "self-critical analysis" privilege has never been recognized in circuit); *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003) (same); *Union Pac. R.R. Co. v. Mower*, 219 F.3d 1069, 1076 n. 7 (9th Cir.2000) (calling the privilege "novel" and noting that the Ninth Circuit has not recognized the privilege); *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (noting that Fifth Circuit has not recognized the "self-evaluation" privilege).

Even if this Court determines that the privilege exists, Defendant has not demonstrated that

---

[2] As the Supreme Court made clear in *University of Pennsylvania*, creating new privileges is disfavored and inappropriate unless it "promotes sufficiently important interests to outweigh the need for probative evidence." *Univ. of Pennsylvania v. E.E.O.C.*, 493 U.S. at 189. The starting point in the analysis is always the "fundamental principle that 'the public [] has a right to every man's evidence.'" *Id.* (quoting *Trammel v. United States,* 445 U.S. 40, 50 (1980)). Defendant has made no effort to show why a "self-critical evaluation" privilege should be recognized here.

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
Page 3

maintaining the AAR's confidentiality is necessary to vindicate whatever interests are protected by the privilege. To invoke the privilege, Defendant must show that "(i) the information sought resulted from a critical self-analysis undertaken by the party seeking protection; (ii) the public has a strong interest in preserving the free flow of the type of information sought; and (iii) the information is of the type whose flow would be curtailed if the discovery were allowed." *Bailey v. City of New York*, No. 14 Civ. 2091, 2015 WL 4523196, at *5–6 (E.D.N.Y. July 27, 2015) (internal quotation marks omitted). Defendant cannot rest on a "conclusory assertion that their self-critical analysis would be chilled by the prospect of discovery is insufficient to support a finding of privilege." *Id.* at *6. Defendant has to show that it would not conduct "the type of self-critical analysis at issue here" if the confidentiality designation were lifted, *id.*, a showing it has not made.

Defendant's argument in support of confidentiality rests on two assertions allegedly supported by an affidavit from Correctional Services Administrator Richard Hollingsworth: (1) the report is "highly sensitive" and was generated "with an expectation that it would remain confidential"; and (2) "its release for public consumption would cause harm to the BOP's operations." Def.'s Motion, ECF No. 135, at 3. For a number of reasons, these assertions do not satisfy Defendant's burden.

The first assertion, that the report was expected to remain confidential, is of no moment. *Schiller v. City of New York*, No. 04 Civ. 7921, 2007 WL 136149, at *15 (S.D.N.Y. Jan. 19, 2007) ("[T]he mere fact that documents were not intended for public view when they were created does not justify a protective order."). An expectation of confidentiality does not "specify the nature or extent of injury" that will transpire if the document is not deemed confidential. *Havens*, 1995 WL 234710, at *11.

The second assertion, that releasing the document "for public consumption would cause harm to the BOP's operations," is neither supported by the evidence produced by Defendant nor specific enough to satisfy Defendant's burden. Notably, the Hollingsworth affidavit makes no claim about how release of the AAR *to the public* would harm the BOP. Rather, the affidavit only states that BOP officials "*may* be more reserved in their criticism" if they knew there was a risk that the AAR would be *used as evidence* in civil litigation. Hollingsworth Aff. ¶ 4 (emphasis added). But the issue here is not whether the AAR should be disclosed to Plaintiffs for use in litigation against the United States. Even if that were a valid concern, the AAR has been disclosed and used already and given its content will continue to be used in this litigation. The Hollingsworth affidavit contains absolutely no contentions about potential harm caused by the AAR being publicly available. Moreover, even if one stretched to conclude that the affidavit relates to the harms of public disclosure, the statement that officials "may" be more hesitant to express criticism of the BOP is precisely the kind of vague and conclusory allegation of harm that has been rejected by other courts. *Schiller*, 2007 WL 136149, at *15 (rejecting claim for confidentiality based on assertion that its release "'might' make it harder for the NYPD to obtain information from an allegedly confidential source").

Given the presumption in favor of public access to litigation materials that are relevant to

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
Page 4

litigation against public entities,[3] Defendant's "evidence" simply has no relation to the question presented here: whether public access to this material will interfere with the BOP's after-action process. *See Ravenell v. Avis Budget Grp., Inc.*, No. 08 Civ. 2113, 2012 WL 1150450, at *5 (E.D.N.Y. April 5, 2012) (a "blanket assertion that the disclosure of employment audit documents in any case would discourage evaluation of employee position classifications" was insufficient to support a claim of self-critical analysis privilege); *In re Ashanti Goldfields Sec. Litig.,* 213 F.R.D. 102, 105 (E.D.N.Y. 2003) (holding that the corporate defendant had "significant incentives to assess and correct problems in its business strategies and undertake corrective measures to avoid future losses" and that "[t]hose incentives far outweigh any harm that might result from disclosure"); *Boyd v. City of New York,* No. 86 Civ. 4501, 1987 WL 6915, at *2 (S.D.N.Y. Feb. 11, 1987) ("Frank and self-critical investigation is, in my view, more likely required by the pressure of public scrutiny than discouraged by it."). Defendant has not provided "any relevant legal or factual argument to support this claim," and it therefore should be rejected. *Bailey*, 2015 WL 4523196, at *6.

Other courts reviewing identical types of reports have rejected invocation of the self-critical analysis privilege. In *MacNamara v. City of New York*, No. 04 Civ. 9612, 2007 WL 755401 (S.D.N.Y. Mar. 14, 2007), New York City argued that the privilege should protect the NYPD's After-Action Reports on the same theory articulated by Defendant here. The court rejected the argument, stating that "the City [gave] NYPD officials too little credit" as "[t]he NYPD has a strong incentive to evaluate its tactics regularly and carefully because, as a government agency, it has an obligation to the public to ensure that its operations are effective." *MacNamara,* 2007 WL 755401, at *4; *see also Wimer v. Sealand Serv., Inc.*, No. 96 Civ. 8730, 1997 WL 375661, at *2 (S.D.N.Y. July 3, 1997) ("It is altogether implausible that a company in the business of supplying or operating ocean-going vessels would choose not to fix demonstrably malfunctioning equipment merely because those repairs, or reports recommending them, might find their way into the hands of an injured seaman."). The BOP has no less of an interest in evaluating itself than the NYPD and, notwithstanding Defendant's conclusory assertion to the contrary, it has not shown that lifting confidentiality of the AAR will deter the BOP from conducting such reviews in the future.[4] Indeed,

---

[3] Unless documents are legitimately confidential, public access to discovery produced in federal court is presumed. *See Certain Underwriters at Lloyd's v. United States*, No. 2:08-CV-841, 2010 WL 2683142, at *1 (S.D. Ohio July 1, 2010) (describing public's interest in discovery documents); *Abbott v. Lockheed Martin Corp.*, No. 06-CV-701MJR, 2008 WL 5221096, at *2 (S.D. Ill. Dec. 12, 2008) (court has a duty to ensure that protective orders balance public interest in having access to non-confidential material against parties' interest in protecting documents "unsuited for public disclosure"). This is especially the case where, as here, the federal government is involved in the litigation. *Cf. Doe v. Pub. Citizen*, 749 F.3d 246, 271 (4th Cir. 2014) ("The interest of the public and press in access to civil proceedings is at its apex when the government is a party to the litigation."); *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 409 (1st Cir. 1987) (holding that public had interest in viewing documents relied upon by government agency in agreeing to consent decree, even where documents were not submitted to court); *Marisol A. v. Giuliani*, No. 95 CIV. 10533, 1997 WL 630183, at *4 (S.D.N.Y. Oct. 10, 1997) ("The presumption of access to the Report is strong because it is likely to play an important role in the Court's Article III function and since both the parties and the subject matter of this litigation are of public interest.").

[4] State and federal corrections after-action reports have been reported on or otherwise made available to the public at large repeatedly, and both state and federal corrections agencies continue to conduct these reviews. *See, e.g.*, Janosch Delcker, *Fatal Corrections*, Intercept (Dec. 17, 2016), https://theintercept.com/2016/12/17/inside-the-deadlymississippi-riot-that-pushed-the-justice-department-to-rein-in-private-prisons/; Seth Freed Wessler, *Federal*

Judge Gold already rejected Defendant's claim that disclosing the AAR would deter the BOP from conducting similar reviews in the future. *See* ECF No. 94 at 3 ("It strikes this Court that BOP, as a public agency, would prefer to be perceived as ready, willing, and able to take a hard, critical look at its own performance after an emergency like the one at issue in this lawsuit."). Defendant has presented no new evidence that would call Judge Gold's conclusion into question.[5]

Similarly, in *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, No. 07 Civ. 2014, 2008 WL 199537 (S.D.N.Y. Jan. 22, 2008), the court found that NASD's assertion of chill, "without a more concrete explanation, does not constitute a showing of good cause" for protection. *Id.* at *12. The court specifically reviewed declarations supplied by the defendants which are nearly identical in substance to the affidavit provided here. Like the BOP, NASD claimed that disclosure of the documents would have a "chilling effect" and would "discourage the Board from engaging in the fullest and most candid discussions possible." *See* Second Declaration of Todd Diganci ¶ 42, *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, No. 07 Civ. 2014 (S.D.N.Y. Jan. 22, 2008), ECF No. 149. NASD did not offer further specificity and the district court accordingly rejected NASD's claim for protection under Rule 26(c). 2008 WL 199537, at *12. The same result follows here.

Maintaining the confidential status of the AAR report is particularly inappropriate because it was submitted as an exhibit in support of Plaintiffs' motion for class certification and is therefore a "judicial" document, with a presumption of public access. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 122 (2d Cir. 2006); *Tomassini v. FCA US LLC*, No. 14 Civ. 1226, 2017 WL 9400672, at *3 (N.D.N.Y. Jan. 6, 2017) (holding that documents submitted with respect to class action were judicial documents because "the inclusion or exclusion of class members to an action" was analogous to a determination on the merits of the litigation); *Mark v. Gawker Media LLC*, No. 13 Civ. 4347, 2015 WL 7288641, at *2 (S.D.N.Y. Nov. 16, 2015) (deeming "documents submitted in connection with Plaintiff's Motion for Class Certification" to be judicial documents for purposes of the *Lugosch* analysis); *Bowling v. Johnson & Johnson*, No. 17 Civ. 3982, 2019 WL 1760162, at *8 (S.D.N.Y. Apr. 22, 2019) (same).

Finally, as Defendant concedes, there already has been ample public disclosure of Defendant's many failures surrounding the Winter 2019 power failure. *See, e.g.*, Office of the Inspector Gen., *Review and Inspection of Metropolitan Detention Center Brooklyn Facilities*

---

*Officials Ignored Years of Internal Warnings About Deaths at Private Prisons*, Nation (June 15, 2016), https://www.thenation.com/article/archive/federal-officials-ignored-years-of-internal-warnings-about-deaths-atprivate-prisons/; *After-Action Report – Willacy Co Correctional Facility TX, fBOP, 2015*, Prison Legal News (Dec. 29, 2016), https://www.prisonlegalnews.org/news/publications/after-action-report-willacy-co-correctional-facilitytx-fbop-2015/.

[5] Defendant argues that when the issue was litigated before Judge Gold, the question was whether the AAR should be disclosed on an "attorneys' eyes only" basis to Plaintiffs' counsel. But Defendant has made no factual showing or legal argument that addresses the particular harms that would flow from disclosure to the public, and Judge Gold's conclusion that the BOP would benefit from the perception that it is willing to engage in self-criticism is, if anything, more germane to public disclosure.

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
Page 6

*Issues and Related Impacts on Inmates*, at i, 5 (2019).[6] In light of these revelations, Defendant has made no showing that the disclosure of this additional critical document will have any impact on the BOP's operations. *Cf. Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 n.11 (2d Cir. 2004) (noting futility of issuing protective order for information that has already been publicly disclosed).

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's request to maintain the confidentiality of the AAR. We thank the Court for its time and attention to this matter.

Respectfully submitted,

/s

Scout Katovich
Katherine Rosenfeld
O. Andrew F. Wilson
Sonya Levitova, *Legal Fellow*
*Emery Celli Brinckerhoff Abady Ward & Maazel LLP*

Betsy Ginsberg
*Civil Rights Clinic, Benjamin N. Cardozo School of Law*

Alexander A. Reinert

cc:   All Counsel of Record (via ECF)

---

[6] Available at https://oig.justice.gov/reports/2019/e1904.pdf.