UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

DAVID SCOTT, JEREMY CERDA, OSMAN AK, MERUDH PATEL, GREGORY HARDY, and LARRY WILLIAMS, individually and on behalf of all others similarly situated,

       Plaintiffs,

v.

FORMER WARDEN HERMAN QUAY, FACILITIES MANAGER JOHN MAFFEO, and THE UNITED STATES OF AMERICA,

       Defendants.

No. 19 Civ. 1075

(Korman, J.)
(Kuo, M.J.)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL**

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

CARDOZO CIVIL RIGHTS CLINIC
Benjamin N. Cardozo School of Law
55 Fifth Avenue, 11th Floor
New York, NY 10003
(212) 790-0871

ALEXANDER A. REINERT, ESQ.
55 Fifth Avenue, Room 1005
New York, NY 10003
(646) 592-6543

TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ................................................................................................. ii-iii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ................................................................................................................................ 2

    I.    PLAINTIFFS SATISFY RULE 23(A)'S REQUIREMENTS ..................................... 2

        A.    Class Members' Claims Present Multiple Common Questions of Law and Fact ................................................................................................ 2

        B.    Plaintiffs Satisfy Both Typicality and Adequacy ......................................... 4

            1.    By Definition of the Class, Plaintiffs' Claims Are Typical of the Class ............................................................................................. 4

            2.    Because *American Pipe* Tolling Applies, the Status of Class Members' Individual Administrative Exhaustion Is Immaterial, and the Named Plaintiffs May Assert Tolling on Behalf of the Class ................................................................................................. 5

            3.    Distinctions Between Class Members Do Not Defeat Typicality or Adequacy ..................................................................................... 8

    II.    COMMON QUESTIONS OF LAW AND FACT PREDOMINATE, SATISFYING RULE 23(B)(3) ............................................................................................................. 9

CONCLUSION .......................................................................................................................... 10

TABLE OF AUTHORITIES

PAGE NO.

**Cases**

*Adkins v. Morgan Stanley*,
    307 F.R.D. 119 (S.D.N.Y. 2015) ........................................................................................ 8

*American Pipe & Construction Co. v. Utah*,
    414 U.S. 538 (1974) .................................................................................................. 6, 7, 8

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000) .................................................................................................. 5

*Bivens v. Six Unknown Named Agents*,
    403 U.S. 388 (1971) ........................................................................................................... 1

*Brown v. Kelly*,
    609 F.3d 467 (2d Cir. 2010) ........................................................................................ 6, 10

*Butler v. Suffolk Cnty.*,
    289 F.R.D. 80 (E.D.N.Y. 2013) ........................................................................................ 2

*Butto v. Collecto Inc.*,
    290 F.R.D. 372 (E.D.N.Y. 2013) ...................................................................................... 3

*California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*,
    137 S. Ct. 2042 (2017) ....................................................................................................... 7

*Casale v. Kelly*,
    257 F.R.D. 396 (S.D.N.Y. 2009) ...................................................................................... 8

*Collins v. Olin Corp.*,
    248 F.R.D. 95 (D. Conn. 2008) ......................................................................................... 3

*Crown, Cork & Seal Co., Inc. v. Parker*,
    462 U.S. 345 (1983) ........................................................................................................... 6

*Hardie v. United States*,
    No. 19 Civ. 4318, 2020 WL 7485015 (E.D.N.Y. Nov. 17, 2020) ..................................... 7

*In re Visa Check/Master Money Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ............................................................................................ 10

*Irwin v. Dep't of Veterans Affs.*,
    498 U.S. 89, 95-96 & n.2 (1990) ....................................................................................... 7

*Jensen v. Cablevision Sys. Corp.*,
    372 F. Supp. 3d 95 (E.D.N.Y. 2019) ............................................................................. 5

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015) ................................................................................... 4, 10

*Koppel v. 4987 Corp.*,
    191 F.R.D. 360 (S.D.N.Y. 2000) ................................................................................. 6

*Langley v. Coughlin*,
    715 F. Supp. 522 (S.D.N.Y. 1989) ............................................................................. 10

*Lewis v. Alert Ambulette Serv. Corp.*,
    No. 11 Civ. 442, 2012 WL 170049 (E.D.N.Y. Jan. 19, 2012) ..................................... 9

*Newkirk v. Pierre*,
    No. 19 Civ. 4283, 2020 WL 5035930 (E.D.N.Y. Aug. 26, 2020) ................................ 3

*Parker v. City of New York*,
    No. 15 Civ. 6733, 2017 WL 6375736 (E.D.N.Y. Dec. 11, 2017) ........................... 8, 10

*Schlesinger v. Reservists Comm. to Stop the War*,
    418 U.S. 208 (1974) .................................................................................................... 6

*United States v. Kwai Fun Wong*,
    575 U.S. 402 (2015) .................................................................................................... 7

*Waggoner v. Barclays PLC*,
    875 F.3d 79, 85 n.5 (2d Cir. 2017) .............................................................................. 3

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................................................................... 3

*Zipes v. Trans World Airlines, Inc.*,
    455 U.S. 385 (1982) .................................................................................................... 7

**Statutes**

28 U.S.C. § 2675 .................................................................................................................. 1

## PRELIMINARY STATEMENT

This case is a quintessential class action and should be certified as such. Defendant the United States of America confined the named Plaintiffs and proposed class in custody at the Metropolitan Detention Center ("MDC") during the Conditions Crisis in 2019. Defendant neglected the MDC's infrastructure for years leading up to the crisis. When the electrical and related systems (predictably) failed because of Defendant's gross inattention to their maintenance, Defendant subjected 1,600 incarcerated people to inhumane, dark, and frigid conditions for a week where temperatures dropped to two degrees Fahrenheit. Approximately 1,000 people have *already filed* administrative claims against the Bureau of Prisons ("BOP") arising from this precise incident. The named Plaintiffs now seek to certify a proposed class of the incarcerated people who were in the same jail building, during the same week, under the same Defendant's custody and control, and exposed to the same inhumane conditions, caused by the same Defendant's careless failure to maintain that building and respond adequately to an emergency in its jail.[1]

Defendant concedes numerosity, ascertainability, and the superiority of the class action mechanism. Its remaining arguments as to commonality, typicality, adequacy, and predominance hold no water. First, multiple questions of law and fact are common to all class members. Second, the named Plaintiffs' claims are typical of the claims of the proposed class, and Plaintiffs are adequate representatives of the proposed class. And third, common questions of law and fact

---

[1] As noted in Defendant's Memorandum of Law in Opposition to Motion for Certification ("Def.'s Opp.") at 3, after Plaintiffs served the instant motion requesting certification of two proposed classes, the Court denied Defendant's motion to dismiss as to Plaintiffs' Federal Tort Claims Act ("FTCA") claim and granted it as to Plaintiffs' constitutional claim brought pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Given the dismissal of Plaintiffs' *Bivens* claim, Plaintiffs seek certification only for the FTCA Class, defined as all persons incarcerated at the Metropolitan Detention Center's West Building during the Conditions Crisis who have or will in the future have satisfied the exhaustion requirement imposed by 28 U.S.C. § 2675, with Plaintiffs David Scott and Jeremy Cerda as representatives. Plaintiffs' Memorandum of Law in Support of Motion for Certification ("Pls.' Mem.") at 8-9.

1

predominate over any minor variations between class members. Plaintiffs respectfully request that the proposed class be certified.

## ARGUMENT

### I. PLAINTIFFS SATISFY RULE 23(A)'S REQUIREMENTS

#### A. Class Members' Claims Present Multiple Common Questions of Law and Fact

Without providing a single example, Defendant argues that unidentified dissimilarities within the proposed class may prevent common answers to the central inquiry in this case, namely whether Defendant was negligent and thereby harmed the class members. Not so. Plaintiffs have alleged that Defendant was negligent in maintaining the building's infrastructure, that Defendant's negligence harmed class members when the building's power failed, and that Defendant's common course of conduct towards the class during an emergency was negligent and damaging.[2] And Plaintiffs have enumerated multiple common questions of law and fact, undisputed by Defendant, that will resolve the contested issue of Defendant's negligence. Pls.' Mem. at 13.

Defendant argues without support that the negligence inquiry at hand is necessarily individual. Def.'s Opp. at 6. This case arises from Defendant's common and uniform treatment of these class members. The central legal inquiry is whether *Defendant* breached its duty of care to class members, all of whom were in BOP custody during the Conditions Crisis, not whether "each individual . . . experienced a breach of a cognizable duty of care." *Id*. at 7. This is precisely the sort of common question whose resolution will affect all class members and establish commonality. *See, e.g.*, *Butler v. Suffolk Cnty.*, 289 F.R.D. 80, 98 (E.D.N.Y. 2013) (finding commonality based on disputed lawfulness of defendant's conduct at correctional facility); *Collins*

---

[2] The BOP's After Action Report on the Conditions Crisis, produced in mostly unredacted form on March 29, 2021, makes self-evident the systemic nature of Defendant's negligence in maintaining the MDC's infrastructure. *See* Ex. 1 (After Action Report). Among other things, the report discusses a lack of leadership and direction within the MDC Facilities Department, the long-standing lack of maintenance or repair to the facility's HVAC system, and broadly "problematic" management of the building's maintenance. Ex. 1 at 19, 21, 28.

2

*v. Olin Corp.*, 248 F.R.D. 95, 106 (D. Conn. 2008) (certifying Rule 23(b)(3) class of homeowners for negligence claim against firearms and munitions manufacturer). And there are many other common questions, including whether Defendant failed to properly maintain the MDC's infrastructure, failed to adequately staff the maintenance department, departed from accepted correctional practices in responding to the week-long lack of power in the prison, or provided adequate clothing or blankets to people at the MDC during the Conditions Crisis. All of these questions and more are plainly common to Plaintiffs and the proposed class, as well as susceptible to common proof. Even if there are minor variations in class members' experience of the Conditions Crisis, class members' "individual circumstances . . . may differ without precluding class certification" so long as there is "a common nucleus of operative facts or an issue that affects all members of the class." *Butto v. Collecto Inc.*, 290 F.R.D. 372, 392 (E.D.N.Y. 2013).

Plaintiffs' burden at this stage is not to prove that each person experienced a breach of duty of care or injury but to demonstrate common questions whose resolution will affect the class. As this Court has found, Plaintiffs sufficiently alleged the elements of a New York state negligence claim as set forth in their amended complaint. March 22, 2020 Order; *see Newkirk v. Pierre*, No. 19 Civ. 4283, 2020 WL 5035930, at *5 (E.D.N.Y. Aug. 26, 2020) ("[I]t is proper for a district court to accept allegations in the complaint as true for a class certification motion . . . ."); *Waggoner v. Barclays PLC*, 875 F.3d 79, 85 n.5 (2d Cir. 2017) (same). "[P]laintiffs seeking class certification are not required to establish the merits of their underlying substantive claims . . . ." *Newkirk*, 2020 WL 5035930, at *5. Whether Plaintiffs can satisfy the elements of negligence depends on answers to the clearly common questions enumerated above. This is all that is needed to comply with Rule 23(a)(2). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (commonality satisfied where answers to common questions are "apt to drive the resolution of the litigation" (cleaned up));

3

*Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (commonality satisfied by "issues whose resolution will affect all or a significant number of the putative class members").

### B. Plaintiffs Satisfy Both Typicality and Adequacy

Next, Defendant recycles the same arguments to contend that Plaintiffs' claims are not typical, and that Plaintiffs cannot adequately represent the proposed class.[3] Defendant argues, in turn, that the Plaintiffs Scott and Cerda—who have satisfied the FTCA's administrative exhaustion requirement by filing administrative claims with the BOP prior to bringing suit—are not similarly situated to those class members who have not yet administratively exhausted their claims under the FTCA (affecting typicality and adequacy); that the named Plaintiffs are not entitled to assert tolling of the FTCA's time limits on behalf of the class (affecting typicality); and that, both factually and legally, the named Plaintiffs' claims and interests are insufficiently similar to those of the proposed class (affecting typicality and adequacy). Each of these arguments fails.

#### 1. By Definition of the Class, Plaintiffs' Claims Are Typical of the Class

Plaintiffs' definition of the FTCA Class on its face only includes individuals who ultimately exhaust their administrative remedies by filing claims with the BOP, as the FTCA requires to defeat sovereign immunity. Pls.' Mem at 8. People who exhaust their administrative remedies under the FTCA will be part of the FTCA Class; those who do not, will not. Currently, over 1,000 people have exhausted their administrative remedies and are part of the putative class, of the total approximately 1,600 incarcerated people who were in the MDC during the Conditions Crisis.[4] *Id.* at 9. Members of the FTCA Class (now the only class Plaintiffs seek to certify) are therefore not subject to the defense of sovereign immunity, which likewise does not apply to the

---

[3] Defendant does not dispute Plaintiffs' counsel's qualifications or experience.
[4] Of the remaining 600 people who were at the MDC during the Conditions Crisis, Plaintiffs expect that more class members will exhaust their administrative remedies.

proposed class representatives, all of whom have satisfied exhaustion requirements and may now sue the United States. Defendant's complaint is that Plaintiffs seek to certify a class with members who do not ultimately exhaust their administrative remedies. This is not accurate, and Plaintiffs' proposed class definition puts an end to this inquiry.

Regardless, even if putative class members face certain defenses not faced by the named Plaintiffs, Plaintiffs still satisfy the typicality requirement. Unique defenses are generally a defense to typicality insofar as the putative class *representative* is subject to a unique defense not faced by the class. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000). This is meant to protect the putative class from the "danger that absent class members will suffer if their representative[s] [are] preoccupied with defenses unique to [them]." *Id.* at 60 (cleaned up). Here, Plaintiffs Scott and Cerda will not be preoccupied by unique defenses. Nor is it the case that, given Plaintiffs' proposed class definition and the over 1,000 FTCA Class members who have already exhausted their administrative remedies, the "vast majority" of class members might be subject to unique defenses. *Cf. Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 125 (E.D.N.Y. 2019) (finding, unlike here, that "the interests of the absent class members do not coincide with [the Plaintiff's] interests because the vast majority [99 percent] of the potential class is subject to unique defenses").

        **2.    Because *American Pipe* Tolling Applies, the Status of Class Members' Individual Administrative Exhaustion Is Immaterial, and the Named Plaintiffs May Assert Tolling on Behalf of the Class**

As discussed above, Defendant wrongly claims that the class should not be certified because some putative class members may face defenses relating to administrative exhaustion of their FTCA claim, a defense inapplicable to the named Plaintiffs. Even if this difference were a problem for typicality—which it is not—the named Plaintiffs may assert tolling on behalf of putative class members who have not yet administratively exhausted their claims, pursuant to

5

*American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), rendering the exhaustion issue irrelevant to the typicality analysis.[5]

First, contrary to Defendant's claim, Plaintiffs have "standing"—*i.e.*, share interest and injury with the putative class—to assert the application of *American Pipe* and other equitable tolling on behalf of the putative class. *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974). Plaintiffs assert the same claim as the proposed class, about the same events, and challenge the same course of conduct by BOP employees. Pls.' Mem at 5-6, 14. Plaintiffs' negligence claim arises from the same facts and relies on the same legal arguments as would members of the proposed class. *Id.*; *see Koppel v. 4987 Corp.*, 191 F.R.D. 360, 365 (S.D.N.Y. 2000) (finding typicality where Plaintiffs' claims "arise from the same alleged misconduct" directed towards class members and "assert legal arguments similar to those available" to class members); *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (holding same). And Plaintiffs share class members' interest in remedying the physical and mental injuries experienced during the Conditions Crisis. Plaintiffs are indisputably "part of [the] class" they seek to represent, *Schlesinger*, 418 U.S. at 216, and have standing to assert tolling on behalf of the proposed class.

The purpose of *American Pipe* tolling is to allow class representatives who have met a statute of limitations to protect the rights of class members who have not. *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 352-53 (1983) ("The Court noted in *American Pipe* that a tolling rule for class actions is not inconsistent with the purposes served by statutes of limitations. . . .

---

[5] Equitable tolling is also appropriate. Defendant's characterization of the circumstances putative class members faced in attempting to exhaust their administrative remedies is incorrect. Def.'s Opp. at 12. The fifty-one-page handbook Defendant references contains precisely three sentences about FTCA claims and makes no mention of the two-year time limit. Bureau of Prisons, *Inmate Admission & Orientation Handbook* 27 (2017), https://www.bop.gov/locations/institutions/bro/BRO_aohandbook.pdf. Also, Defendant was ordered to produce a list of putative class members remaining in BOP custody and address information for those who had been released from BOP custody in March 2020 and October 2020, respectively. Dkt. 83. Plaintiffs have thus conducted the majority of class member outreach during the COVID-19 pandemic.

Rule 23 both permits and encourages class members to rely on the named plaintiffs to press their claims."). Defendant does not even address the fact that the Supreme Court has held that equitable tolling applies to the FTCA's time bars, *United States v. Kwai Fun Wong*, 575 U.S. 402, 412 (2015), and that in its holding the Court specifically referred to *American Pipe* tolling as one example of such tolling, *id.* at 414. Nor does Defendant address that the Supreme Court has already rejected the premise of Defendant's argument—by holding that named plaintiffs in Title VII actions may represent unnamed class members who have not filed administrative claims with the EEOC.[6] *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393-97 (1982). None of the authority Defendant cites relates to class certification or applies *American Pipe* tolling, and almost all of the authority predates *Kwai Fun Wong*.[7] Def.'s Opp. at 12-13. And though Defendant suggests tolling should be construed strictly here because the FTCA is a waiver of sovereign immunity, the Court rejected that argument in *Kwai Fun Wong*, holding that the point of the FTCA is to put the United States on the same footing as a private party. 575 U.S. at 419-20. Here, named Plaintiffs may raise *American Pipe* tolling on behalf of the putative class at the appropriate time, and satisfy typicality.

Finally, given that Defendant may eventually move for a ruling that some subset of class members did not timely exhaust their administrative remedies, and Plaintiffs will respond that *American Pipe* tolling applies to those claims, this is yet another common subsidiary legal issue to be adjudicated on a class-wide basis, not in 600 separate suits brought to determine piecemeal

---

[6] The Supreme Court has long analogized Title VII's administrative filing requirements with the FTCA's. *See Kwai Fun Wong*, 575 U.S. at 417; *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95-96 & n.2 (1990).

[7] Defendant cites to one case that applies equitable tolling principles in the context of an individual FTCA action. Def.'s Opp. at 12 (citing *Hardie v. United States*, No. 19 Civ. 4318, 2020 WL 7485015, at *5 (E.D.N.Y. Nov. 17, 2020). *Hardie* applies traditional equitable tolling, not *American Pipe*. And although equitable tolling sometimes requires considerations of individualized circumstances, *American Pipe* tolling is satisfied here by the fact that the named Plaintiffs filed timely administrative claims, a question common to all class members. *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2052 (2017) ("[*American Pipe*] did not analyze, for example, whether the plaintiffs pursued their rights with special care; whether some extraordinary circumstance prevented them from intervening earlier; or whether the defendant engaged in misconduct.").

7

whether *American Pipe* tolling applies to each individual case. The Court has myriad case management tools available to address *American Pipe* tolling for those putative class members to whom it applies: for example, by creating a case management sub-class pursuant to Rule 23(d) "to expedite resolution of the case by segregating a distinct legal issue that is common to some members of the existing class," *Casale v. Kelly*, 257 F.R.D. 396, 408 (S.D.N.Y. 2009) (cleaned up), or "a convenient subclass for particular litigation purposes *without* formally designating it as a Rule 23 subclass," *id.* at 409 n.99 (emphasis in original) (cleaned up). However the Court ultimately chooses to address *American Pipe* tolling, the class action remains the appropriate mechanism for the uniform, organized resolution of this legal issue common to some members of the class.

### 3. Distinctions Between Class Members Do Not Defeat Typicality or Adequacy

Defendant points to speculative and irrelevant differences between Plaintiffs and putative class members, such as class members' precise location within the MDC during the Conditions Crisis, to claim that typicality and adequacy are not satisfied. But it is *Defendant's* conduct that is at issue. *Adkins v. Morgan Stanley*, 307 F.R.D. 119, 138 (S.D.N.Y. 2015), *aff'd*, 656 F. App'x 555 (2d Cir. 2016) ("The central feature for typicality is that plaintiffs assert that defendants committed the same wrongful acts in the same manner, against all members of the class, and the court looks not at the plaintiffs' behavior, but rather at the defendant's actions.") (cleaned up). Here, Defendant engaged in a uniform course of conduct as to all the people it held at the MDC with respect to the core issues in dispute.

Moreover, the typicality and adequacy requirements contemplate distinctions between a class representative and putative class members. *Parker v. City of New York*, No. 15 Civ. 6733, 2017 WL 6375736, at *9 (E.D.N.Y. Dec. 11, 2017) (finding typicality "irrespective of varying fact

8

patterns" underlying individual claims where class representative claims are typical of class members') (cleaned up); *Lewis v. Alert Ambulette Serv. Corp.*, No. 11 Civ. 442, 2012 WL 170049, at *11 (E.D.N.Y. Jan. 19, 2012) ("Only a fundamental conflict will defeat the [adequacy] requirement."). That Mr. Scott may have been confined on one floor and a putative class member on another is not material: the Amended Complaint alleges that Defendant deprived everyone in the building of power, heat, electricity, adequate food and medicine, and basic care. There are no fundamental conflicts of interest between the proposed class representatives and putative class members, who all share an interest in establishing Defendant's negligence and receiving damages as redress for physical and mental injuries experienced during the Conditions Crisis.

To summarize: Defendant's concerns about the applicability of sovereign immunity are unfounded given Plaintiffs' definition of the FTCA Class, which includes only those individuals who will have met the FTCA's exhaustion requirements. In any event, Plaintiffs are entitled to assert *American Pipe* tolling on behalf of the class, which obviates the need for the Court to resolve any issues of administrative exhaustion, certainly at this stage. Plaintiffs and proposed class members share a close common core of facts and legal questions focused on Defendant's conduct towards them, and any hypothetical variations are irrelevant to the success of their claims and insufficient to overcome the closely aligned interests of Plaintiffs and the FTCA Class. Plaintiffs satisfy the typicality and adequacy requirements of Rule 23(a)(3) and 23(a)(4).

## II. COMMON QUESTIONS OF LAW AND FACT PREDOMINATE, SATISFYING RULE 23(B)(3)

To argue that Plaintiffs have not demonstrated Rule 23(b)(3) predominance, Defendant repeats its unfounded claim that individualized proof is necessary in this case.[8] Plaintiffs' theory

---

[8] Defendant does not appear to dispute that Plaintiffs satisfy Rule 23(b)(3)'s other requirement, the superiority of the class action device for resolving the instant case.

of liability can clearly be established by common proof. Plaintiffs and class members were in Defendant's custody in the same place, at the same time, pursuant to Defendant's identical policies and procedures, and subject to the same conduct by Defendant. The question at the core of each class member's claim is whether Defendant's actions before and during the Conditions Crisis amounted to negligence. This question of law is the same for each of the people housed in the MDC's West Building during the Conditions Crisis, as are multiple questions of fact, the resolution of which would substantially advance this case. *See supra* Part I.A. These fundamental issues do not vary among class members and predominate over any factual variations that may exist.

Plaintiffs have cited multiple cases where courts certified class actions under Rule 23(b)(3) concerning a defendant's common policy or practice that injured incarcerated class members, even in potentially individualized ways—none of which Defendant acknowledges. *Parker*, 2017 WL 6375736, at *11; *Langley v. Coughlin*, 715 F. Supp. 522, 561 (S.D.N.Y. 1989). Class-wide resolution would "substantially advance the case," *Johnson*, 780 F.3d at 138 (cleaned up), and certification will "reduce the range of issues in dispute and promote judicial economy," *id.* (cleaned up). Both Plaintiffs and the proposed class challenge the practices and conduct of BOP employees at the MDC before and during the Conditions Crisis. There is a clear, "strong commonality of the violation and the harm." *Brown*, 609 F.3d at 468 (quoting *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001)). Plaintiffs thus satisfy Rule 23(b)(3)'s predominance requirement.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the class as set forth above, pursuant to Rule 23(b)(3), and appoint Plaintiffs' counsel as class counsel.

<table>
<tr><td>

Dated: New York, New York  
       May 6, 2021

</td><td>

EMERY CELLI BRINCKERHOFF ABADY  
WARD & MAAZEL LLP

By:          /s/           
    Katherine Rosenfeld  
    O. Andrew F. Wilson  
    Scout Katovich  
    Sonya Levitova, *Fellow*  
    600 Fifth Avenue, 10th Floor  
    New York, NY 10020  
    (212) 763-5000

CARDOZO CIVIL RIGHTS CLINIC  
    Betsy Ginsberg  
    Kira Brekke, *Legal Intern*  
    Clare Haugh, *Legal Intern*  
    Benjamin N. Cardozo School of Law  
    55 Fifth Avenue, 11th Floor  
    New York, NY 10003  
    (212) 790-0871

ALEXANDER A. REINERT, ESQ.  
    Alexander A. Reinert  
    55 Fifth Avenue, Room 1005  
    New York, NY 10003  
    (212) 790-0403

*Attorneys for Plaintiffs and the Putative Class*

</td></tr>
</table>