September 15, 2021

***By ECF***

Hon. Peggy Kuo
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

*Re:* *Scott et al. v. Quay et al.,* 19-cv-01075 (ERK) (PK)

Dear Judge Kuo:

This joint letter is submitted on behalf of all parties in accordance with Your Honor's individual rules to resolve a discovery dispute as to Plaintiffs' Document Request No. 44, which seeks copies of all requests for medical care submitted by incarcerated individuals at the Metropolitan Detention Center ("MDC") during the week in 2019 at issue in this case.

**Plaintiffs' Position**

The Plaintiff-Class requests that the Court order Defendant to produce all requests for medical care submitted by detained people at the MDC during the power failure between January 27 and February 3, 2019 (the "Conditions Crisis").

By Document Request No. 44 served on December 20, 2019, Plaintiffs sought: "All documents concerning requests for medical assistance, medication, and/or refills of medication submitted by people detained at the MDC during the Conditions Crisis, including hand-written requests." (emphasis added).[1] While Defendant has produced some responsive documents that were created by BOP employees—for example a post-hoc memo summarizing medical emergencies during the week of the power outage or a spreadsheet created by MDC Health Services employees listing "clinical encounters"—Defendant refuses to produce the actual requests for medical care submitted by class members.

These documents are essential discovery. In support of its defense that MDC had a functioning medical care delivery system in place during the Crisis despite the power outage and lockdown, Defendant claimed that people housed at the MDC could still request medical care via handwritten notes. For example, the After-Action Report states that "During the electrical outage, inmates had to submit sick call and medication refill requests via paper to the medical staff."[2] The OIG Report recites similar claims.[3] It is undisputed that these hand-written requests for medical care exist. Indeed, at his deposition, Andre Matevousian, who led the BOP's internal investigative team that authored the After Action Report, testified that his medical expert

[1] Attached as Exhibit A is the relevant excerpt of Plaintiffs' First Set of Document Requests.
[2] After Action Report, Dkt. 141-1, at 24.
[3] "Further, although MDC Brooklyn management told us inmates could have submitted paper requests for refills of certain medications, we found that the standard electronic request method was unavailable during the power outage." Office of the Inspector General, Review and Inspection of Metropolitan Detention Center Brooklyn Facilities Issues and Related Impacts on Inmates, https://oig.justice.gov/reports/2019/e1904.pdf, at ii.

specially reviewed these exact hand-written requests as part of their investigation.[4]

The hand-written requests for medical care are important because they will show which class members requested medical care and what ailments they complained of, and will provide a first-hand account of class members' medical distress during the Conditions Crisis. They will also allow Class Counsel to determine if people who requested medical care actually received it. Plaintiffs are entitled to this discovery to help prove their allegations that Defendant negligently failed to provide adequate medical care during the Conditions Crisis. *See* Amended Complaint, Dkt. 29 ¶¶ 86-87, 90-91, 128-29, 272, 279a-u. Indeed, in Judge Korman's decision granting class certification, he specifically referenced the provision of medical care as one of the common issues presented in this action. *See* Class Certification Decision, Dkt. 134 at 9-10. Defendant has informed Class Counsel that it is not obliged to provide medical records related to all class members because the named plaintiffs have not alleged that they personally were denied medical care. Given that the named plaintiffs have been appointed to represent all class members, this objection is beside the point, but even were it relevant, the Named Plaintiffs *have* alleged that they were denied adequate medical care. *See* Amended Complaint, Dkt. 29 ¶¶ 86-87, 90-91, 128-29.

The discovery produced to date is an inadequate substitute for these documents. The produced documents provide cursory information *only* about medical care provided by the BOP, not about what care was requested, including requests that may have been ignored. The few longer records of clinical encounters produced (only those attached to a memo about the most serious medical emergencies during the Conditions Crisis or concerning some of the named plaintiffs) are also insufficient because, again, they are authored by BOP employees; they are not the contemporaneous *requests* for medical help as submitted by class members.

One cornerstone of the Government's defense is that despite the lack of power in the MDC, they still provided adequate access to the basic life necessities typically available in prisons and jails, including medical care. This claim rests in large part on the assertion that sick people could request medical care by writing down their requests on pieces of paper and handing them to staff, in lieu of emailing requests. Just as the BOP itself did to analyze the sufficiency of medical care during the Crisis, Plaintiffs are also entitled to review these documents to test the veracity of Defendant's claim. There is no substitute for these records. Accordingly, we respectfully request that the Court order the Defendant to produce all requests for medical care submitted by detained people at the MDC during the Conditions Crisis.

**Defendant's Position**

Plaintiffs' request for written sick call requests, or, as Plaintiffs' counsel has characterized these requests in conferral, the "scraps of paper" where individuals requested medical attention, is not helpful in resolving the parties' claims and defenses for two primary reasons. First, Plaintiffs do not truly bring any medical-related claims, the alleged injuries are not proximately caused by a lack of medical care, and the requested documents are, at best, tangential to Plaintiffs claims. But even assuming Plaintiffs could seek recovery on the basis of a lack of care, the written sick call requests are not important in discovering the provision of care

[4] Attached as Exhibit B is an excerpt from the transcript of the deposition of Andre Matevousian,(Tr: 141-42).

(or lack thereof) during the period at issue. Because this discovery is not important in resolving the issues and is disproportionate to the needs of the case, Plaintiffs' request should be denied. *See* Fed. R. Civ. P. 26(b)(1).

Plaintiffs Cannot Assert a Claim for Medical Negligence

Plaintiffs' request for additional medical records should be denied as disproportionate to the needs of the case because they are unable to show—and have inadequately pleaded a claim for—medical negligence, for a number of reasons.

First, despite Plaintiffs' claim to the contrary above, Plaintiffs have not plausibly "alleged that they were denied adequate medical care." Rather, Plaintiff Scott merely claims that he requested medical evaluation, Am. Compl., ¶ 87, and admits he was seen by medical staff within days, *id*., ¶ 92. Similarly, Cerda claims only that he was "not offered" mental health treatment during the period at issue, *id*, ¶ 129, but does not even allege he requested it. The "injuries" alleged by Plaintiffs, *e.g*., skin fungus, need for an x-ray, *see* ¶ 86, were not caused by the power outage or even any lack of medical treatment. Rather, they were unrelated medical issues that existed at the time of the power outage. Second, Plaintiffs have no direct knowledge of any failure to provide medical care to others, whether members of the class or not. *See generally* Am. Compl. Third, even if Plaintiffs could press some kind of lack of care claim on behalf of the class, their claims will not succeed because they cannot establish the required elements for such a claim—breach and causation. Plaintiffs have not pleaded that the United States breached the applicable standards of care, or even identified applicable standards. *See Milano by Milano v. Freed*, 64 F.3d 91, 95 (2d Cir. 1995); *Torres v. New York,* 154 F. Supp. 2d 814, 819 (S.D.N.Y. 2001); *see also Jiminez v. United States*, No. 11-cv-4593, 2013 WL 1455267, at *6 (S.D.N.Y. Mar. 25, 2013) (allegations of "pain and suffering, mental anguish, and emotional distress ... as a result of inadequate medical treatment, medical health evaluations, and delay in treating injuries," without showing as to breach of standard of care and causation failed to "nudge[] [the plaintiff's] claim of medical malpractice over the line from possible to plausible"). Fourth, Plaintiffs have failed to proffer any expert support for a claim that any breach led to any injury, *e.g.*, by way of a Certificate of Merit. *See Sitts v. United States*, 811 F.2d 736, 740 (2d Cir. 1986)), as is required under substantive New York law, which applies to this FTCA action because the conduct took place in New York, *see Agyin v. Razmzan*, 986 F.3d 168, 184 (2d Cir. 2021) ("law of the place" applies to FTCA actions); 28 U.S.C. § 1346(b). Rather, Plaintiffs' "claim" regarding lack of care seems grounded in the legally baseless theory that the United States is liable for any pre-existing condition that persisted throughout the period at issue.

The Requested Records Are Not Helpful in Resolving Plaintiffs' Claims

Even assuming Plaintiffs could proceed on a claim for medical negligence resulting from lack of care, the requested written sick call requests are still not helpful in resolving the parties' claims and defenses. To inflate the importance of the written sick call requests, Plaintiffs mischaracterize the nature of the over 500 pages of medical documentation Defendant produced in response to their demand. For example, what Plaintiffs dismissingly describe as a "spreadsheet created by [staff] listing 'clinical encounters'" are 113 pages of records from the MDC's electronic medical records system describing the date and nature of each clinical encounter that took place during the period at issue. Plaintiffs also neglect to mention the

hundreds of pages detailing each administration of medication and insulin during the period at issue.[5] Notably, Defendant has provided all non-privileged records regarding medical care relied upon by the OIG investigation and After Action Review Team. Defendants also produced several documents regarding medical issues as part of its over 8,000-page ESI production. Further still, Defendant offered—as a compromise position to avoid the instant motion practice—to produce additional contemporaneous logs from the MDC medical records system showing the records of encounter of any kind between inmates and medical staff. Plaintiffs declined that offer. Against the backdrop of this already fulsome response by Defendant, it is entirely unclear why Plaintiffs need the requested written sick call requests at all.

Lastly, Plaintiffs misstate Defendant's contentions regarding medical care, claiming above that Defendant relies "in large part" on the availability of written sick call requests and, claiming during the parties' meet and confer, that without written sick call requests, the system "failed." Neither statement is accurate – MDC implemented a robust system where inmates could request care through several methods, including through direct contact with daily staff administrating medication as described in the already-produced medical documentation. In view of these avenues to obtain care, it does not follow that written sick call requests can establish that MDC failed to provide proper care. And in any event, that care is documented not in written sick call requests, but in contemporaneous medical records. Given the more than 10,000 pages of information already produced, and the issues legitimately in dispute, Plaintiffs' request is not helpful in resolving those claims, and is disproportionate to the needs of the case. For these reasons, the Court should deny Plaintiffs' demand that Defendant search for and produce any remaining written sick call requests.

***

We appreciate the Court's consideration of this matter.

Respectfully submitted,

Scout Katovich
Katherine Rosenfeld
O. Andrew F. Wilson
*Emery Celli Brinckerhoff Abady Ward & Maazel LLP*

Betsy Ginsberg
*Civil Rights Clinic, Benjamin N. Cardozo School of Law*

Alexander A. Reinert

Seth D. Eichenholtz
Sean P. Greene-Delgado
Kathleen Mahoney
Shana C. Priore
Paulina A. Stamatelos
*United States Attorney's Office*

cc: All Counsel of Record (via ECF)

[5] These documents were produced on May 12, 2020. Plaintiffs have provided no reason that they waited more than a year to raise the issue of a supposedly inadequate response because of the lack of written sick call requests.